215 P.3d 1114

Alan L. GAVECK, D.P.M., an individual,
Plaintiff/Appellant,

v.

ARIZONA STATE BOARD OF
PODIATRY EXAMINERS,
Defendant/Appellee.

No. 1 CA–CV 08–0422.

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 1, 2009.

Crawford & Kline, P.L.C. By Bruce D. Crawford, Tempe, Attorneys for Plaintiff/Appellant.

Terry Goddard, Attorney General By Keely Verstegen, Assistant Attorney General, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

WINTHROP, Judge.

¶ 1 Alan L. Gaveck, D.P.M. ("Dr. Gaveck"), appeals the superior court's order affirming the decision of the Arizona State Board of Podiatry Examiners ("the Board") to issue a decree of censure and place Dr. Gaveck's podiatry license on probation. For the reasons that follow, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2 Dr. Gaveck is a duly licensed podiatrist in private practice in Arizona. On January 14, 2005, Dr. Gaveck, at his office, surgically split and repositioned the flexor tendon attached to the second toe of D.O.'s right foot. On January 17, 2005, Dr. Gaveck performed a second surgery on the same toe to address severe pain D.O. was experiencing after the first surgery. Dr. Gaveck had determined that the toe pain occurred because "blood vessels that feed the toe appeared to be stretched too tight," and thus the second surgery was deemed necessary to "take the stretch off the blood vessels." To achieve this result, Dr. Gaveck removed approximately five millimeters of bone from D.O.'s toe. Although D.O. signed a consent form for the January 14 procedure, she did not sign a new consent form for the second surgery.

¶ 3 D.O.'s pain persisted, and the toe became discolored and blistered. Dr. Gaveck saw D.O. at her home four times from January 18 through 21, 2005, and treated the toe by changing bandages and draining a blister. On January 24, 2005, D.O. sought a second opinion from another podiatrist in Dr. Gaveck's office. That podiatrist, after noticing the toe had vascular deficits and was exhibiting "gangrenous changes," made arrangements for an emergent vascular evaluation at a hospital to determine whether hyperbaric oxygen therapy would be appropriate. A third doctor amputated D.O.'s toe on February 15, 2005.

¶ 4 On January 18, 2006, D.O. filed a complaint with the Board, alleging Dr. Gaveck's "incompetence and negligence" was the "direct cause of [her] toe amputation." A copy of that complaint was provided to Dr. Gaveck, and a narrative response was requested and received. The Board gathered the appropriate records and conducted an internal investigation.

¶ 5 On January 24, 2007, the Board issued a Notice of Informal Interview,[1] alleging Dr. Gaveck may have engaged in unprofessional conduct by failing to obtain D.O.'s written informed consent before performing the second surgery and by failing to recommend D.O. obtain a vascular consultation or second opinion during her post-operative care, all in violation of Arizona Revised Statutes ("A.R.S.") section 32–854.01(9) and (20)(2008).[2] The Board also informed Dr. Gaveck's counsel by letter that the Board had not relied on any third-party experts as part of its investigation or to support its allegations, and it would not be calling an independent expert to testify at the informal interview. When offered a choice between participating in the informal interview process or proceeding with a formal hearing to be conducted at the Office of Administrative Hearings,[3] Dr. Gaveck's attorney returned to the Board a signed and dated form in which, on Dr. Gaveck's behalf, he elected to resolve the complaint through the informal interview process. In the same form, Dr. Gaveck, through counsel, expressly waived his right to a formal hearing, while acknowledging that the informal interview process could result in the imposition of formal discipline. See A.R.S. § 32–852.01(D).

¶ 6 The Board conducted the informal interview on April 11, 2007. Dr. Gaveck appeared with counsel and testified. Dr. Ga-

---

1. An Amended Notice of Informal Interview, containing a typographical correction, was subsequently issued on February 28, 2007.

2. We cite the current version of the statute if no revisions material to our analysis have since occurred. This statute was last revised in 2000.

See 2000 Ariz. Sess. Laws, ch. 12, § 4 (2nd Reg.Sess.) (eff. March 13, 2000).

3. See A.R.S. § 32–852.01(D) (2008); see also A.R.S. §§ 41–1092 to –1092.12 (2008 & Supp. 2008).

veck admitted that he did not obtain D.O.'s written consent before performing the second surgical procedure, but he contended a separate consent was not required because the procedure was "a continuation of the primary surgery." Dr. Gaveck also testified that he conducted serial examinations of the patient in the post-operative period and did not make any objective findings that suggested a need for a vascular consult.

¶ 7 The only other testimony considered by the Board at the informal interview was provided by Dr. Jeffrey Page, a podiatry specialist, who appeared as an expert witness for Dr. Gaveck. Dr. Page testified that Dr. Gaveck's failure to obtain D.O.'s written consent before the second surgery "falls into something of a gray zone," but that his decision to not obtain such a separate consent did not constitute a departure from the applicable standard of care. Dr. Page further testified that Dr. Gaveck acted reasonably in not recommending or obtaining a vascular consult because, based on Dr. Gaveck's post-operative notes, it appeared "improvement was continuing" on D.O.'s toe after the second surgery.

¶ 8 Following the doctors' testimony, Dr. Gaveck's counsel requested from the Board the opportunity "to examine your witness against Dr. Gaveck, your expert witness." In noting that the Board had not called or relied on any independent experts as part of its investigation or evaluation, the Board chair denied the request and responded, "Why do we need an expert witness? We are the expert witnesses." Raising a concern regarding the fairness of the proceedings, counsel unsuccessfully requested the complaint be dismissed, apparently because the Board had neither disclosed the standard of care against which Dr. Gaveck's actions were to be measured nor provided any expert who could be cross-examined as to the allegations against Dr. Gaveck.

¶ 9 After deliberating in open session, the Board unanimously agreed the allegations in the Notice of Informal Interview had been sustained and that Dr. Gaveck was guilty of unprofessional conduct in his care and treatment of the patient. The Board issued a decree of censure and placed Dr. Gaveck's license on probation for one year subject to certain terms and conditions.

¶ 10 Dr. Gaveck unsuccessfully moved for rehearing and/or review of the Board's decision, and he then sought judicial review in superior court. In a signed minute entry, the superior court affirmed the Board's disciplinary order. This timely appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12–913 (2003) and 12–2101(B) (2003).

## ANALYSIS

*I. Standard of Review*

¶ 11 In reviewing an administrative agency's decision, the superior court examines whether the agency's action was arbitrary, capricious, or an abuse of discretion. *Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs*, 202 Ariz. 555, 557, ¶ 7, 48 P.3d 505, 507 (App.2002). The court must defer to the agency's factual findings and affirm them if supported by substantial evidence. *See id.; Sanders v. Novick*, 151 Ariz. 606, 608–09, 729 P.2d 960, 962–63 (App.1986). If an agency's decision is supported by the record, substantial evidence exists to support the decision even if the record also supports a different conclusion. *See DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 336, 686 P.2d 1301, 1306 (App.1984) (quoting *Webster v. State Bd. of Regents*, 123 Ariz. 363, 365–66, 599 P.2d 816, 818–19 (App.1979)).

¶ 12 We engage in the same process as the superior court when we review its ruling affirming an administrative decision. *See Webb*, 202 Ariz. at 557, ¶ 7, 48 P.3d at 507; *Sanders*, 151 Ariz. at 608, 729 P.2d at 962. Whether substantial evidence exists is a question of law for our independent determination. *See generally Pinal Vista Props., L.L.C. v. Turnbull*, 208 Ariz. 188, 189–90, ¶ 6, 91 P.3d 1031, 1032–33 (App.2004); *Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prods., Inc.*, 167 Ariz. 383, 387, 807 P.2d 1119, 1123 (App.1990). We are not bound by an agency's or the superior court's legal conclusions. *Sanders*, 151 Ariz. at 608, 729 P.2d at 962.

## II. Due Process

¶ 13 Dr. Gaveck contends the Board denied him "meaningful" due process at the informal interview, which he describes as a "sham proceeding," because the Board did not clearly articulate the standard of care against which his actions were to be measured. He also asserts the Board violated his due process rights because it presented no independent expert evidence that he breached the standard of care, and instead relied on its own expertise in determining that his treatment of D.O. was not only unprofessional, but merited the imposition of discipline as described above.

¶ 14 We agree that, notwithstanding its label, the informal interview entitled Dr. Gaveck to procedural due process. *See Webb*, 202 Ariz. at 558, ¶ 8, 48 P.3d at 508 (noting that the State may not, through professional censure, deprive a physician of the property interest embodied in a license to practice medicine without affording that physician due process of law). Due process requirements may vary depending on the setting, *id.* at ¶ 12 (citing *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)), but in this context, "[p]rocedural due process requires notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *Id.* at ¶ 9 (citing *Comeau v. Ariz. State Bd. of Dental Exam'rs*, 196 Ariz. 102, 106–07, ¶ 20, 993 P.2d 1066, 1070–71 (App.1999)). A party also enjoys a due process right to offer evidence and confront adverse witnesses. *Curtis v. Richardson*, 212 Ariz. 308, 312, ¶ 16, 131 P.3d 480, 484 (App.2006). However, "[d]ue process is not a static concept; it must account for 'the practicalities and peculiarities of the case.'" *Comeau*, 196 Ariz. at 107, ¶ 20, 993 P.2d at 1071 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 310, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). We first address Dr. Gaveck's specific argument that he had a due process right to require the Board to present standard of care evidence.

¶ 15 In *Croft v. Arizona Board of Dental Examiners*, this court determined that expert testimony was not required to independently establish the applicable standard of care in a disciplinary proceeding conducted by the Arizona State Board of Dental Examiners when a dentist was charged with providing inadequate treatment. 157 Ariz. 203, 209–10, 755 P.2d 1191, 1197–98 (App.1988). We reasoned that, as distinct from a malpractice case tried to a jury or a court, the decisions in an administrative disciplinary proceeding against a professional licensee are made by a board comprised of individuals who presumably have knowledge of the applicable standard of care. *Id.*

¶ 16 In *Webb*, the licensing board investigated a patient's complaint against a surgeon for failure to timely test for and diagnose a condition later proven to be cancerous. 202 Ariz. at 556–57, ¶¶ 1–4, 48 P.3d at 506–07. A board consultant reviewed the complaint, the doctor's written narrative response, and the patient chart, and concluded in a report to the board that the doctor "should have been more aggressive in pursuing a diagnosis." *Id.* at 557, ¶ 4, 48 P.3d at 507. The board notified the doctor that it was scheduling an "informal interview" to discuss the complaint and his care and treatment of the patient. *Id.* at ¶ 5. The board further advised the doctor of his right to appear with counsel and the board's potential options following the interview, ranging from further investigation and/or dismissal to the taking of disciplinary action, even to the point of referring the matter for formal hearing and possible license revocation. *Id.* The board did not advise Dr. Webb that he had the option of declining the interview in favor of a full formal hearing. *Id.*

¶ 17 Dr. Webb appeared without counsel at the interview, following which he was censured for "unprofessional conduct." *Id.* at ¶ 6. During the interview, Dr. Webb attempted but was denied the right to cross-examine the board's consultant concerning his adverse opinions. *Id.* at 559–60, ¶¶ 13–17, 48 P.3d at 509–10. Following an unsuccessful request for rehearing, and judicial review by the superior court, which affirmed the administrative decision, Dr. Webb filed a notice of appeal. *Id.* at 556, ¶ 1, 48 P.3d at 506.

¶ 18 On appeal, this court reversed, holding that Dr. Webb's agreement to participate in the "informal interview" did not constitute a waiver of his due process rights. *Id.* at

558, ¶ 10, 48 P.3d at 508. Those rights required the board to identify the applicable standard of care, articulate the alleged deviation by Dr. Webb, and indicate how such deviation harmed or might be harmful to the patient. *Id.* at 560–61, ¶¶ 19–23, 48 P.3d at 510–11. Further, in this setting, the board was obligated to advise the doctor in advance of the interview that he had the right to instead request a formal hearing, in which the right to confront and cross-examine the board's expert consultant could be exercised. *See id.* at 557–59, ¶¶ 5, 10–11, 14, 48 P.3d at 507–09. We specifically noted that, pursuant to *Croft*, the licensing board could establish the standard of care based on its members' experience and expertise but could not base its findings "upon either undisclosed evidence or personal knowledge of the facts." *Id.* at 560, ¶ 20, 48 P.3d at 510 (quoting *Croft*, 157 Ariz. at 209, 755 P.2d at 1197). This court further held:

> Nor in our judgment can the Board provide a fair hearing on an issue of negligence without identifying the standard of care and articulating the alleged deviation. Not only must the Board identify the standard and articulate the alleged deviation in order to provide the physician under investigation a fair opportunity to respond to a charge of negligence; it must do so in order to provide a reviewing court an opportunity for meaningful review. "Without clearly articulated standards as a backdrop against which the court can review discipline, the judicial function is reduced to serving as a rubber-stamp for the Board's action." *Woodfield v. Bd. of Prof'l Discipline of State Bd. of Med.*, 127 Idaho 738, 905 P.2d 1047, 1057 (App.1995).

*Id.*

¶ 19 To the extent Dr. Graveck contends *Webb* has overturned the rule enunciated in *Croft* that expert testimony is not required at administrative proceedings, we disagree. *Croft* remains good law. *See, e.g., Golob v. Ariz. Med. Bd.*, 217 Ariz. 505, 512, ¶ 26, 176 P.3d 703, 710 (App.2008); *Elia v. Ariz. State Bd. of Dental Exam'rs*, 168 Ariz. 221, 226, 812 P.2d 1039, 1044 (App.1990); *Lathrop v. Ariz. Bd. of Chiropractic Exam'rs*, 182 Ariz. 172, 181, 894 P.2d 715, 724 (App.1995). In

fact, *Webb* specifically recognizes the continuing viability of that rule. 202 Ariz. at 560, ¶ 20, 48 P.3d at 510. However, we must apply *Croft* with the principles expressed in *Webb* in mind.

¶ 20 Accordingly, even when, pursuant to *Croft*, a professional board relies on its own expertise for the standard of care it applies in adjudicating an allegation, the licensee is entitled under *Webb* to notice of the standard of care that board has chosen to apply. Here, as it relates to the issue of obtaining a written consent for the second surgery, the Board did provide explicit notice to Dr. Gaveck that it believed § 32–854.01(9) was applicable. That subsection—requiring that every surgical procedure have a written informed consent—clearly established a presumptive standard of care that Dr. Gaveck could easily understand and attempt to rebut with his own testimony and that of his expert, Dr. Page.

¶ 21 The issue concerning the need for and timing of a vascular consultation or second opinion, however, is different. In that regard, the Board's notice to Dr. Gaveck that his failure "to recommend that [the] patient, D.O.[,] obtain a vascular consultation or second opinion during her post operative care" was harmful or dangerous to the patient was non-specific. The Board did cite § 32–854.01(20); however, that subsection merely includes in the definition of "unprofessional conduct" "[a]ny conduct or practice which is or might be harmful or dangerous to the health of the patient." This allegation generally signaled the Board's concern with Dr. Gaveck's judgment concerning the patient's post-operative management, but the allegation provided no specifics as to when and why the Board believed the patient's subjective complaints and objective findings were such that a reasonably prudent podiatrist would have recommended or offered to facilitate an outside vascular consultation or second opinion. Accordingly, we conclude the Board's notice concerning this allegation was insufficient.

¶ 22 Often, a professional licensing board will have the case reviewed by a consultant who practices in the same area. In such an instance, as described in *Webb*, procedural

due process mandates that the professional being investigated be provided a copy of the consultant's analysis and opinions, and, upon request, be afforded the opportunity to confront those opinions through cross-examination. 202 Ariz. at 559, ¶¶ 13–14, 48 P.3d at 509.

¶ 23 Here, the Board chose not to retain or otherwise utilize an outside consultant or to call an independent qualified expert to support the Board's allegations. We can appreciate there may be many valid reasons for a professional licensing board to choose this approach, not the least of which is the cost attendant with the retention of and review by such a consultant. This approach may make perfect sense when, as is partially the case here, a licensing board concludes that the allegations and analysis of the professional's conduct are straightforward and appear relatively easy to resolve.

¶ 24 In general, we do not disapprove of either approach. However, in advance of the informal interview or any adjudicatory phase, Dr. Gaveck was entitled to know the exact nature of when and how the Board disagreed with his post-operative management of this patient. As indicated above, that notice could have taken the form of an expert consultant's review and opinions, or it could have been merely a more detailed description of the standard of care the Board believed applicable to Dr. Gaveck's treatment of D.O. and the facts the Board believed supported its charges against him. In the absence of such specific notice, and in light of the deferential standard applied to the review of administrative decisions, there is simply no way for this or any court to conduct a meaningful review of the Board's findings and conclusions.

¶ 25 Accordingly, Dr. Gaveck is entitled to a detailed statement of exactly when and why the Board believes a second opinion or outside specialty consultation was indicated and, following such notice, a new informal interview and adjudication as it relates to the post-surgical evaluation of the patient's condition. We remand this matter to the Board for that purpose.

### III. Related Procedural Issues

¶ 26 At oral argument, counsel for Dr. Gaveck argued that his request to examine the Board's expert witness was intended to cover any of the Board members whose expertise was used to determine the applicable standard of care. The Board in this case was comprised of three licensed practicing podiatrists and two lay persons appointed by the governor. *See* A.R.S. § 32–802(A)–(B) (2008).

¶ 27 As we have previously noted, *Croft* supports the proposition that independent expert testimony was not required at the informal interview to determine whether Dr. Graveck's conduct fell below the applicable standard of care. *See also* A.R.S. § 41–1062(A)(1), (3) (2004) (providing administrative decisions may be made pursuant to informal hearings without following the rules of evidence required in judicial proceedings, and "[t]he agency's experience, technical competence and specialized knowledge may be utilized in the evaluation of the evidence"). Clearly, the Board was entitled to utilize its individual and/or collective expertise in adjudicating this complaint. This does not mean, however, that a licensee has the right to call one or more licensing Board members for cross-examination. Such an approach could be seen as an effort to intimidate the Board, would undermine the presumed efficiency built into the statutory framework of all licensing boards, would implicitly overrule *Croft*, and would eliminate for all practical purposes the use of the informal interview process. We therefore reject Dr. Gaveck's argument that he was entitled to cross-examine any Board member.

¶ 28 Instead, consistent with our holding that, when in an elective informal interview process the Board decides to rely on its own expertise to evaluate the professional conduct of a licensee, due process is satisfied when the Board supplies the licensee with a sufficiently detailed statement of allegations so that the licensee can "confront" and thus reasonably meet the allegations with an informed analysis and opinion from the licensee and/or a retained expert witness. If Dr. Gaveck wanted to force the Board to come forward with independent expert opin-

ion that could then be tested by cross-examination, he could have elected the formal hearing process. As noted above, Dr. Gaveck knowingly, voluntarily, and with the assistance and advice of counsel waived his right to a formal hearing. We reject Dr. Gaveck's unsupported suggestion that he was somehow coerced into electing the informal interview process under the threat of potentially greater discipline available as a result of an administrative law judge's recommendation following a formal hearing.

*IV. Finding of Unprofessional Conduct Regarding Lack of Consent*

¶ 29 As noted above, the Board provided adequate notice to Dr. Gaveck concerning the lack of consent allegation. Dr. Gaveck contends, however, that because his testimony and that of Dr. Page was that Dr. Gaveck treated D.O. within the standard of care, and that testimony was the *only* standard of care evidence presented at the informal interview, the evidence does not support the Board's decision. As it relates to the consent issue, we disagree. The statute itself provided the presumptive standard of care, and the Board was not required to find Dr. Gaveck complied with the requisite standard of care based on his testimony alone or even that of Dr. Page. *See Estate of Reinen v. N. Ariz. Orthopedics, Ltd.,* 198 Ariz. 283, 287, ¶ 12, 9 P.3d 314, 318 (2000) ("The court or jury is not compelled to believe the uncontradicted evidence of an interested party." (citing *City of Tucson v. Apache Motors,* 74 Ariz. 98, 107, 245 P.2d 255, 261 (1952)) ); *Nystrom v. Mass. Cas. Ins. Co.,* 148 Ariz. 208, 214, 713 P.2d 1266, 1272 (App.1986) (recognizing that the trier of fact is not bound by the uncontradicted testimony of interested witnesses); *see also Premier Fin. Servs. v. Citibank (Ariz.),* 185 Ariz. 80, 86, 912 P.2d 1309, 1315 (App.1995) (stating that a fact-finder "is not bound to accept even the uncontradicted evidence of a disinterested party," to say nothing of interested ones (citing *In re Wainola's Estate,* 79 Ariz. 342, 346, 289 P.2d 692, 695 (1955)) ). Finally, as we have previously noted, the Board was entitled to rely on its own expertise in evaluating the allegations, the statutory requirement, and the testimony of Drs. Gaveck and

Page in determining whether, under these circumstances, Dr. Gaveck had engaged in unprofessional conduct.

## CONCLUSION

¶ 30 The Board's finding of unprofessional conduct relative to the consent allegation is affirmed. The Board's finding of unprofessional conduct relative to the post-surgical management of the patient and the superior court's order affirming that finding are vacated, as is the discipline imposed by the Board. This matter is remanded to the Board as outlined above and, upon completion of that process, for a new determination as to the discipline, if any, the Board deems appropriate in light of its findings.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and PATRICIA K. NORRIS, Judge.