NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TIM MCCORMICK, *Plaintiff/Appellee*,

*v.*

SONORAN FAMILY COMMUNITIES, LLC, *Defendant*; ARIZONA
REGISTRAR OF CONTRACTORS, an Arizona governmental agency,
*Defendant/Appellant.*

No. 1 CA-CV 13-0039
FILED 4-8-2014

Appeal from the Superior Court in Maricopa County
No.  LC2011-000565-001
The Honorable Crane McClennen, Judge

**VACATED**

COUNSEL

Schern Richardson Finter Decker PLC, Phoenix
By Aaron M. Finter
*Counsel for Plaintiff/Appellee*

Arizona Attorney General's Office, Phoenix
By Montgomery Lee
*Counsel for Defendant/Appellant Arizona Registrar of Contractors*

---

**MEMORANDUM DECISION**

---

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Patricia A. Orozco joined.

---

T H U M M A, Judge:

**¶1** This dispute arises out of Sonoran Family Communities, LLC's commitment in early 2005 to build a single family residence on a parcel of land (Lot 4) in Gold Canyon, Arizona. Sonoran went out of business, lost its contractor's license, never finished building the home and appellee Tim McCormick claims he lost a down payment of more than $35,000. McCormick made a claim against the Arizona Registrar of Contractor's (ROC) Residential Contractors Recovery Fund (Fund), which allows an eligible person injured by a licensed residential contractor's violation of applicable law to receive up to $30,000 for such a loss. *See* Arizona Revised Statutes (A.R.S.) section 32-1132(A) (2014). [1]

**¶2** To be eligible for recovery from the Fund, McCormick had to show he was a "person injured," which includes a requirement that McCormick intended to occupy Lot 4 as his residence. A.R.S. § 32-1131(3).[2] After an evidentiary hearing, an Administrative Law Judge (ALJ) recommended the ROC find McCormick eligible for recovery. The ROC modified and rejected the ALJ's recommendations, finding McCormick failed to show he was eligible. On appeal, the superior court reversed the ROC's order, "[b]ased on the authorities and arguments presented by McCormick" and awarded McCormick attorneys' fees and costs. The ROC then timely appealed to this court.

**¶3** The narrow issue on appeal is whether the ROC properly modified and rejected the ALJ's recommendations. Finding the ROC did

---

[1] Absent material revisions after the relevant dates, statutes cited refer to the current version unless otherwise indicated.

[2] The "person injured" definition also requires that the property be "classified as class three property under [A.R.S.] § 42-12003." A.R.S. § 32-1131(3). Given the resolution below, it is not necessary to address the classification of Lot 4.

not err, the judgment and award of attorneys' fees and costs is vacated and the ROC's order is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

**¶4**        On January 29, 2005, Sonoran entered into a Purchase Agreement and Receipt for Deposit in which Calypso Investments LLC agreed to buy and Sonoran agreed to build and sell a home on Lot 4. McCormick signed on behalf of Calypso. McCormick testified he was the sole member of Calypso, which apparently held some rental properties, and he "set [Calypso] up for liability protection if somebody got hurt at the rental properties and things like that."

**¶5**        In the following months, Calypso made an escrow payment to Chicago Title Insurance Company and Calypso (by McCormick) and Sonoran signed a Final Purchase Price Addendum. A June 7, 2005 Addendum for Lot 4 states "buyer to be Tim McCormick." A Special Warranty Deed, dated July 8, 2005, and recorded on July 28, 2005 with the Pinal County Recorder and signed by Sonoran, lists McCormick as the sole grantee for Lot 4.

**¶6**        An Affidavit of Property Value signed by McCormick and notarized on July 21, 2005, and recorded with the Pinal County Recorder on July 28, 2005, lists McCormick as the purchaser of Lot 4. Section 7 of this Affidavit states that Lot 4 was "[t]o be rented to someone other than a 'family member'" (as opposed to checking an alternative box indicating "[t]o be occupied by Owner or 'family member'"). The keystone to the resolution of this appeal is the proper force to be given this Affidavit by McCormick stating that the home on Lot 4 was to be rented to someone other than a family member, given McCormick's claim to the contrary years later.

**¶7**        There are some significant gaps in the record about what happened next. A February 2007 letter from Sonoran to McCormick states the home on Lot 4 "is nearing completion. This is a courtesy 60 day notice of your Target Close Date." In April 2007, however, McCormick filed a Consumer Complaint with the Arizona Attorney General, alleging Sonoran had "not finished both houses" that he purchased from Sonoran.[3]

---

[3] Although Calypso purchased Lot 38 in the same development as Lot 4, McCormick did not make a claim against the Fund for losses regarding Lot 38.

This Consumer Complaint alleged a January 16, 2005 "Date of Transaction" and noted that it was supposed to have taken six to eight months to build the home. The record does not reveal the resolution of this Consumer Complaint.

¶8         A May 2007 letter from Sonoran to McCormick states Sonoran had lost its contractor's license, was out of business and was unable to complete the home on Lot 4. Noting the "difficult construction and real estate economic time," the letter adds that Sonoran's parent company was in bankruptcy and "[y]ou are free to contract with whomever you chose to complete your home." The ROC later notified McCormick that Sonoran's contractor's license was revoked in August 2007.

¶9         In May 2009, McCormick filed a verified Complaint against Sonoran with the ROC. That Complaint listed July 22, 2005 as the date of contract for the purchase of Lot 4; lists August 2005 as the completion, close of escrow and move-in date and states the last work was performed on June 10, 2007. McCormick alleged abandonment by Sonoran and sought recovery of $35,305.85. McCormick added that he had "signed over the . . . house" to an investor "in a 'deed in lieu'" a year after work stopped at the property (i.e. mid-2008) and he "no longer owe[d] any $ on the house" but "never got my down payment back." In January 2010, the ROC issued a Decision and Order finding Sonoran abandoned the construction contract in violation of A.R.S. § 32-1154(A)(1) and taking further discipline against Sonoran's contractor's license.

¶10         McCormick also filed a timely claim against the Fund regarding Lot 4.[4] In February 2011, "[a]fter a review of the claim and all supporting documentation," the ROC issued a Notice to Claimant of Recovery Fund Ineligibility. The ROC found McCormick was ineligible for payment from the Fund because, among other things, McCormick did not intend Lot 4 to be owner-occupied under A.R.S. § 42-12004. The ROC noted:

---

[4] To the extent the claim against the Fund was separate from McCormick's May 2009 Complaint, it is not in the record on appeal. The ROC, however, does not dispute that McCormick filed a timely claim against the Fund regarding Lot 4.

> Research at the Pinal County Assessor's office and the Arizona Department of Revenue support the conclusion that Mr. McCormick held this property as investment property. The [ROC] has a copy of a signed and notarized [Affidavit of Property Value] executed by Complainant McCormick, dated 7/21/2005, which states the Complainant's intended use for this property was to rent it as a commercial property to someone other than [a] "family member."
>
> Complainant cannot therefore be classified as a 'person injured' under § 32-1131 as it was not intended to be owner-occupied by Complainant's own sworn statement.

McCormick timely challenged this determination, including requesting an evidentiary hearing at the Office of Administrative Hearings (OAH), which was held in June 2011. Between the February 2011 ineligibility finding and the June 2011 administrative hearing, McCormick took various actions of note.

¶11      In an April 25, 2011 letter to the ROC, McCormick claimed the July 21, 2005 Affidavit of Property Value stating Lot 4 "[t]o be rented to someone other than [a] 'family member'" was a mistake. McCormick attached a notarized letter, with a handwritten "4/20/2011" date, from the Sonoran sales agent stating McCormick "wrote a contract to purchase Lot 4 on February 18, 2005. Mr. McCormick's intent was to occupy this home. He put in many upgrades to make it his own special home." McCormick also attached an unsigned, unverified April 20, 2011 email from a Chicago Title representative who wrote the title insurance policy for Lot 4, stating:

> Chicago Title only issues the Homeowner's Title Policy when the purchaser is going to reside in the property as their principal residence. We do not issue this policy to landlords as it gives a great deal of extra coverage that is afforded to the insured since this would be their own home.

> To address the issue of the Affidavit of Property Value that was recorded with your deed, at the time of this closing in 2005, Escrow was marking the box in Section 7 in our computer system. The Escrow Officer who did this – or the assistant who prepared the document made an assumption that this was to be an investment property and they were incorrect. This clearly should have been marked "To be occupied by Owner. . . . We apologize for this error."

On May 23, 2011, McCormick also recorded a Special Warranty Deed for Lot 4 stating, with reference to the July 21, 2005 Affidavit: "THIS DOCUMENT IS BEING RE-RECORDED TO CHANGE THE INTENDED USE ON THE AFFIDAVIT OF PROPERTY VALUE TO OWNER OCCUPIED."

¶12 At the June 2011 administrative hearing, the ALJ received in evidence various documents (including those identified above) and heard testimony from McCormick and ROC representative Doug Ulmer. Along with going through many of the exhibits, Ulmer testified the ROC was "concerned" about McCormick's intent to be an owner-occupier because Lot 4 was "owned initially by Calypso." Ulmer also expressed concern about the July 21, 2005 Affidavit, stating that Lot 4 was "[t]o be rented to someone other than [a] family member." Ulmer testified that McCormick's May 2009 Complaint was the first documentation of any kind where McCormick expressed an intent to personally occupy Lot 4.

¶13 McCormick testified that the purchase contract for Lot 4 initially referenced Calypso as the buyer because the agent insisted "everything . . . has to be as it appears on the check" and he had the Calypso "checkbook with me." A later addendum "Buyer to be changed to Tim McCormick" was designed to correct that issue. McCormick testified that Section 7 of the Affidavit "was marked in error. And although my responsibility, as I read over all these, I'm supposed to read over all the documents as you buy a house, but as we all know, it's kind of a blur, and yes, it was signed, but it was, it was done in error." McCormick testified that he never occupied any home on Lot 4 because it was never completed.

¶14 In July 2011, the ALJ issued a decision including proposed findings that McCormick obtained ownership of the property in July 2005

and, at that time, signed the Affidavit of Property Value stating the intended use of Lot 4 "was for rental use and not to be occupied by the owner." The ALJ's proposed findings continued:

> At hearing, [McCormick] submitted credible evidence showing that the Affidavit was erroneous with respect to the intended use of the property. This evidence includes a notarized letter from the sales agent stating that [McCormick] intended to live in the home and an e-mail from [McCormick's] title insurance carrier showing that the policy that was issued for the home was for an owner-occupier and not an owner-renter. It also includes a recorded document from a title company stating that the Affidavit should have shown the property to be owner-occupied.

The ALJ concluded that "[t]he evidence shows that [McCormick] intended to occupy the property for which he is seeking recovery" and recommended that the ROC "find that Tim McCormick is eligible for recovery from the Fund."

¶15        Although adopting many of the ALJ's recommendations, in an August 12, 2011 Order, the ROC found McCormick had not submitted credible evidence showing that the Affidavit of Property Value was in error; rejected the ALJ's finding that the evidence showed McCormick intended to occupy Lot 4 and, instead, found "that the evidence presented and the record of the [ROC] shows that [McCormick] did not carry his burden to establish that he intended to occupy" Lot 4. The ROC provided the following rationale for these conclusions:

> <u>Justification</u>: The [ROC] does not find the evidence presented by [McCormick], including the Affidavit, notarized letter from the sales agent and an email from [McCormick's] title insurance carrier, to be credible. This evidence was only created and presented by [McCormick] after [McCormick] found out that he would be deemed ineligible for recovery from the . . . Fund. As such, the [ROC] does not give weight to these documents. Further, [McCormick] is no longer

the "owner" of [Lot 4] and the [ROC] finds Complainant's attempt to re-write the history of his previous ownership of [Lot 4] property suspect.

It is significant that the contract executed as a basis of this claim was entered into between [Sonoran] and [McCormick's] business entity, Calypso Investments LLC. Payments on this contract were rendered by Calypso Investments LLC, not by [McCormick] individually. [McCormick] also used Calypso Investments LLC to buy at least one other property, in the same subdivision as the subject property, that was admitted to be a commercial venture by [McCormick].

Intent to occupy, as with all eligibility hurdles that must be overcome by [McCormick], must be evaluated at the time of the contract and/or at the time of if injury. The weight of the evidence in the record over the relevant time frame does not support that [McCormick's] intent was to occupy the subject property.

Accordingly, the ROC found that McCormick "is ineligible for recovery from the" Fund.

¶16 McCormick filed a timely complaint for judicial review in superior court arguing the ROC's decision was not based on substantial evidence and sought attorneys' fees. *See* A.R.S. §§ 12-901 to -914, 32-1154(F). "Based on the authorities and arguments presented by McCormick," the superior court found the record supported the ALJ's findings and conclusions that McCormick was eligible for recovery from the Fund, reversed the ROC's decision to the contrary and remanded for the ROC to determine the proper award amount. The superior court also granted McCormick's request for attorneys' fees. This court has jurisdiction over the ROC's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-913, -2101(A)(1).

**DISCUSSION**

¶17        The standard of review on appeal is "whether the agency's action was arbitrary, capricious, or an abuse of discretion." *Gaveck v. Ariz. State Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 436, ¶ 11, 215 P.3d 1114, 1117 (App. 2009) (citation omitted). Arbitrary and capricious agency action has been described as "unreason[ed] action, without consideration and in disregard for facts and circumstances." *Petras v. Ariz. State Liquor Bd.*, 129 Ariz. 449, 452, 631 P.2d 1107, 1110 (App. 1981) (quoting *Tucson Pub. Sch., Dist. No. 1 of Pima Cnty. v. Green*, 17 Ariz. App. 91, 94, 495 P.2d 861, 864 (App. 1972)). "The court must defer to the agency's factual findings and affirm them if supported by substantial evidence. If an agency's decision is supported by the record, substantial evidence exists to support the decision even if the record also supports a different conclusion." *Gaveck*, 222 Ariz. at 436, ¶ 11, 215 P.3d at 1117 (citations omitted).

¶18        Whether McCormick intended to occupy Lot 4 "as a residence" under A.R.S. § 32-1131(3) is determined by looking at his intent (1) when the contract was entered into or (2) when the claim accrued. *McMurren v. JMC Builders, Inc.*, 204 Ariz. 345, 347, ¶ 1, 63 P.3d 1082, 1084 (App. 2003). The evidence considered by the ROC admittedly was in conflict. The contract was entered into either when McCormick was designated the buyer in an Addendum dated June 7, 2005, or when the property transferred pursuant to the Special Warranty Deed dated July 21, 2005 and recorded July 28, 2005. Viewed most favorably to McCormick, his claim accrued at some point prior to when he filed his May 2009 Complaint with the ROC. Accordingly, the relevant inquiry focuses on McCormick's intent in June/July 2005 and in or before May 2009.

¶19        In July 2005, McCormick filed a notarized Affidavit of Property Value with Pinal County stating that Lot 4 was to be rental property and "[t]o be rented to someone other than [a] 'family member.'" That Affidavit was not changed or withdrawn prior to McCormick filing his ROC Complaint in May 2009. That Affidavit is consistent with the ROC's finding that McCormick did not show he intended to occupy Lot 4 as a residence. McCormick did not attempt to alter this recorded Affidavit until after the ROC relied on the filing in finding him ineligible to recover from the Fund in February 2011. The ROC was not required to ignore the representation by McCormick in this Affidavit or this substantial passage of time.

¶20        McCormick's May 2009 Complaint with the ROC alleges that Sonoran "was to build me a house to move into." This allegation is

consistent with McCormick's argument that he intended to occupy Lot 4 as a residence at some point, as the ROC acknowledged. McCormick, however, "signed over the . . . house" to an investor "in a 'deed in lieu'" sometime in mid-2008, meaning he had not owned Lot 4 for nearly a year before filing his ROC Complaint. The ROC was not required to accept without question the allegations in McCormick's Complaint.

¶21　　McCormick's efforts to show his earlier intent after the ROC found he was ineligible for Fund recovery in February 2011 warrant close examination. Although providing an April 2011 notarized letter from the Sonoran sales agent stating McCormick's "intent was to occupy the home" when he "wrote a contract to purchase Lot 4 on February 18, 2005," the record reveals no February 18, 2005 purchase contract (although there is an escrow receipt using that date), and McCormick was not a party to the contract to purchase Lot 4 until June 2005. Moreover, although admissible in the administrative hearing, McCormick has not shown that the ROC was compelled to accept at face value this statement by a sales agent purporting to describe McCormick's intent six years earlier. *Cf. Ariz. State Liquor Bd. v. Jacobs*, 20 Ariz. App. 166, 169, 511 P.2d 179, 182 (App. 1973) (noting administrative agency "is the sole judge of the weight to be given each item of evidence"). Similarly, the ROC was not compelled to accept the statements in the unsigned, unverified email from a Chicago Title representative, particularly when compared to a contrary declaration in the July 2005 notarized Affidavit. *Id.* at 169, 511 P.2d at 182.

¶22　　Finally, although McCormick purported to amend the July 2005 Affidavit by recording a Special Warranty Deed in May 2011, he did so after the ROC found him ineligible for Fund recovery based on his statements in the July 2005 Affidavit. Even then, the May 2011 Special Warranty Deed stated that he was re-recording the July 2005 Affidavit "TO CHANGE THE INTENDED USE ON THE AFFIDAVIT OF PROPERTY VALUE TO OWNER OCCUPIED," not that the July 2005 Affidavit was in error when filed. Moreover, the May 2011 recording came approximately three years after he "signed over the . . . house" to an investor "in a 'deed in lieu'" in mid-2008. In short, the May 2011 recording (1) did not purport to claim that the July 2005 Affidavit was in error; (2) changed the stated intent long after the relevant time period and (3) changed the stated intent years after McCormick had signed away his ownership interest in Lot 4.

¶23　　It is true that McCormick testified at the administrative hearing that his July 2005 Affidavit "was marked in error." Given the conflicting evidence, however, the ROC was not compelled to accept

McCormick's testimony. *See Jacobs*, 20 Ariz. App. at 169, 511 P.2d at 182. If the record supports two inconsistent factual conclusions, substantial evidence supports the ROC's selection of either. *Siler v. Ariz. Dep't of Real Estate*, 193 Ariz. 374, 384, ¶ 56, 972 P.2d 1010, 1020 (App. 1998) (citing authority). On this record, that is precisely what occurred, meaning the ROC's rejecting of McCormick's view on his intent was supported by substantial evidence.

¶24      The ROC's actions also were consistent with *Ritland v. Ariz. State Bd. of Med. Exam'rs*, 213 Ariz. 187, 140 P.3d 970 (App. 2006). The ROC found record evidence for rejecting the ALJ's credibility findings and specified the bases for such action, including the substantial time the recorded July 2005 Affidavit stood without change and that evidence of the claimed error post-dated the ROC's initial determination that McCormick was not eligible for reimbursement. In doing so, the ROC found and specified factual record support for rejecting the ALJ's credibility findings. Nothing more was required. *Id.* at 191, ¶ 14, 140 P.3d at 974 (noting agency may reject ALJ credibility findings if the agency (1) "finds evidence in the record for so doing" and (2) specifies the "factual support for rejecting the ALJ's credibility findings").

¶25      Finding no error in the ROC's factual determinations based on disputed evidence of record, and because the ROC correctly applied the applicable law, the ROC properly determined McCormick failed to show intent to occupy Lot 4 "as a residence." A.R.S. § 32-1131(3). Accordingly, the ROC properly found that McCormick did not qualify for reimbursement from the Fund. Finally, because McCormick did not prevail, his request for attorneys' fees on appeal pursuant to A.R.S. § 12-348(A) is denied.

## CONCLUSION

¶26      The superior court's judgment and award of attorneys' fees and costs is vacated and the ROC's August 12, 2011 Order is affirmed.

