NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SUNFLOWER ADULT DAY CARE CORPORATION,
*Plaintiff/Appellant-Cross Appellee*,

*v.*

AHCCCS ADMINISTRATION,
*Defendant/Appellee-Cross Appellant*.

No. 1 CA-CV 18-0535
FILED 9-26-2019

Appeal from the Superior Court in Maricopa County
No. LC2017-000332-001
The Honorable Patricia A. Starr, Judge

**AFFIRMED IN PART AND VACATED IN PART**

COUNSEL

Hymson Goldstein Pantiliat & Lohr, PLLC, Phoenix
By Lori N. Brown
*Counsel for Plaintiff/Appellant*

Broening Oberg Woods & Wilson, Phoenix
By Jathan P. McLaughlin, Alicyn M. Freeman
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Paul J. McMurdie joined.

---

**T H U M M A**, Judge:

¶1        This appeal involves an administrative civil monetary penalty and assessment (CMP) imposed on Sunflower Adult Day Care Corporation (Sunflower) by the Arizona Health Care Cost Containment System (AHCCCS). Sunflower challenges the superior court's decision affirming a Decision by the AHCCCS Director, adopting an administrative law judge's (ALJ) recommendation to impose a CMP of $701,550.14 on Sunflower. AHCCCS challenges the court's decision remanding for further administrative consideration of mitigating evidence. Because Sunflower has not shown the Director's Decision was erroneous, it is affirmed and, accordingly, the court's ruling is affirmed in part and vacated in part.

**FACTS AND PROCEDURAL HISTORY**

¶2        In 2005, Sunflower began providing adult daycare to AHCCCS members. In 2007, Sunflower began transporting clients to and from daycare and doctor's appointments. In 2014, Sunflower expanded its transportation services to the Navajo Nation. Sunflower transported AHCCCS members according to Provider Participation Agreements (PPA), which were periodically updated, and signed the PPA relevant here in June 2014. Sunflower was to keep track of its transportation services on "trip sheets," which included the driver's and recipient's names; the date; the pickup and drop off time; location and odometer reading; the total trip miles; the reason for the trip and the signatures of the recipient and driver for each trip.

¶3        In 2014, AHCCCS' Office of the Inspector General (OIG) received "an anonymous referral about Sunflower," which OIG special investigator Shauna Dempsey investigated. Dempsey requested from AHCCCS' "provider integrity team" Sunflower's claims data from January 1, 2012 through June 30, 2015. Due to the large volume of claim lines included from that time (19,000), Dempsey then sought a random sample for closer review. The random sample, identified by use of an algorithm, contained 287 claim lines. In September 2015, Dempsey sent Sunflower a

letter requesting documentation, including trip sheets, relating to those 287 claim lines.

¶4        In October 2015, AHCCCS terminated Sunflower's PPA, a decision that was later challenged administratively and in the superior court and, following a remand, affirmed by this court. *Sunflower Adult Day Care Corp. v. AHCCCS Admin.*, CA-CV 18-0162, 2019 WL 470716 (Ariz. App. Feb. 7, 2019).

¶5        Meanwhile, Bella Davidova, a Sunflower manager who oversaw billing, began compiling the documents Dempsey requested. At Dempsey's request, Davidova alphabetized the records and, in doing so, "noticed that the trip sheets looked identical. . . . [T]he information on each trip sheet would be the same. The only thing is the date would be different. So [she] thought there [was] something wrong" and reported it to Sunflower's owner Yakov Yushuvayev. Yushuvayev, in turn, contacted Dempsey and informed her of the findings, stating Sunflower "believe[d] there was an overpayment and they wanted to return money to AHCCCS." Dempsey responded that Sunflower "couldn't return the money because there was an investigation underway," and the parties agreed to meet to discuss the issue. Dempsey and Sunflower met at least twice to review the trip sheets and apparent discrepancies. After multiple requests by Dempsey, Sunflower provided the majority, but not all, of the documents requested.

¶6        In May 2016, the OIG sent Sunflower a "Notice of Intent: Imposition of Civil Monetary Penalty and Assessment of $714,494.23."[1] The Notice stated Dempsey had "identified 110 claim lines billed in violation of" Arizona law and alleged Sunflower had "transported AHCCCS members that did not have [associated] medical services;" submitted trip sheets "that were altered and photo-copied;" billed "AHCCCS for services that were provided by subcontracted parties not correctly registered with AHCCCS;" and "failed to provide all of the records requested by AHCCCS OIG." Sunflower appealed the Notice and requested a hearing before an ALJ, which was held over three days ending in July 2017. Dempsey, Yushuvayev, Davidova, and AHCCCS forensic account manager Scott

---

[1] In December 2015, the OIG sent Sunflower a Notice of Intent citing a larger number of erroneous claims and a larger penalty and assessment. After an administrative decision that Sunflower would not be penalized for managed care claims, however, the OIG rescinded that notice, removed the managed care claims and associated penalty and assessment, and then sent the May 2016 Notice, which addresses only fee-for-service claims.

Weinberg testified at the hearing. The ALJ heard evidence regarding the violations alleged, the applicable mitigating and aggravating circumstances, and the methods used by AHCCCS to determine the penalty and assessment amounts.

¶7            The ALJ recommended imposition of a civil penalty of $165,000 and an assessment of $536,550.14, totaling $701,550.14. AHCCCS accepted the ALJ's recommendation and upheld the CMP in an August 2017 Director's Decision. Sunflower then appealed the Director's Decision to the superior court. The court found "substantial evidence [] support[ed] the factual findings made by the Director." The court nonetheless remanded for further administrative consideration of the CMP amount, finding that – although Sunflower had failed to show the extrapolation used by AHCCCS was flawed – AHCCCS had failed to consider "the mitigating factor of Sunflower's financial condition, and improperly considered as an aggravating factor that Sunflower failed to cooperate." Sunflower timely appealed the court's ruling largely affirming the Director's Decision, and AHCCCS cross-appealed the court's remand ruling.

¶8            This court has jurisdiction over the appeal and cross-appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) section 12-2101(A)(1)(2019).[2]

## DISCUSSION

¶9            Sunflower argues that: (1) AHCCCS' substantive allegations are not supported by substantial evidence; (2) AHCCCS failed to apply two mitigating factors; and (3) AHCCCS' extrapolation method was flawed. AHCCCS argues that the Director's Decision was correct in its entirety and the superior court erred by finding the Director failed to consider Sunflower's financial condition and improperly considered Sunflower's degree of cooperation as mitigating and aggravating factors, respectively.

¶10           The superior court reviews an administrative agency's decision to determine whether it was illegal, arbitrary, capricious, or an abuse of discretion. *Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs*, 202 Ariz. 555, 557 ¶ 7 (App. 2002). When reviewing the superior court's ruling, this court "engage[s] in the same process," *Gaveck v. Ariz. St. Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 436 ¶ 12 (App. 2009), and "independently examine[s] the record to determine whether the evidence supports the judgment,"

_____

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

4

*Webb*, 202 Ariz. at 557 ¶ 7. Because the Director's Decision "is the final administrative decision entitled to deference," *Smith v. Ariz. Long Term Care Sys.*, 207 Ariz. 217, 220 ¶ 14 (App. 2004), this court defers to and will affirm the agency's factual findings if they are supported by substantial evidence, *Gaveck*, 222 Ariz. at 436 ¶ 11. "If an agency's decision is supported by the record, substantial evidence exists to support the decision even if the record also supports a different conclusion." *Id.* This court reviews issues of statutory interpretation de novo. *Eaton v. Ariz. Health Care Cost Containment Sys.*, 206 Ariz. 430, 432 ¶ 7 (App. 2003).

**I.    The Director's Decision Properly Found Sunflower Submitted False Claims That Did Not Fall Within The Overpayment Clause Of The PPA.**

**¶11**         Sunflower argues the Director's Decision erred by finding that Sunflower submitted false trip sheets and did not fall within the overpayment clause of Sunflower's PPA with AHCCCS. As Sunflower acknowledged in its reply brief on appeal, this court issued a decision addressing and rejecting the same arguments in the context of AHCCCS' termination of Sunflower's contract. *Sunflower Adult Day Care Corp. v. AHCCCS Admin.*, CA-CV 18-0162, 2019 WL 470716 (Ariz. App. Feb. 7, 2019) (mem. decision). This court finds persuasive and agrees with the reasoning applied in that memorandum decision, which Sunflower acknowledges affirmed that (1) AHCCCS "did not err in finding that Sunflower's reimbursement requests for services provided by [subcontractors] violated" applicable administrative regulations; (2) AHCCCS did not err "in finding that Sunflower violated both the repayment clause of the PPA and Arizona law" by its submission of trip sheets it "had reason to know . . . were fraudulent;" and (3) AHCCCS did not err in finding that Sunflower's actions did not place it "beneath the umbrella of the overpayment clause." *Id.* at *4-5. Adopting and applying that same reasoning here, this court affirms the findings as to Sunflower's submission of false claims and failure to fall within the overpayment clause.

**II.   The Director's Decision Properly Accounted For Sunflower's Financial Condition And Properly Considered Sunflower's Failure To Cooperate And That The Services Related To False Claims Were Provided Over More Than Six Months.**

**¶12**         The superior court affirmed the Director's Decision finding that the timing of services related to the claims and Sunflower's degree of culpability were not mitigating circumstances. But the court found the Director had "failed to address" evidence of Sunflower's financial condition

in the form of Yushuvayev's testimony. Accordingly, the court concluded it was "unable to determine whether Sunflower's financial condition should have been considered mitigating." The court also concluded the Director erred in finding that Sunflower's refusal to provide information or cooperate was an aggravating circumstance. As a result, the court remanded for AHCCCS to reconsider the fine amount "after proper weighing of the mitigating and aggravating factors."

¶13 Sunflower argues the Director's Decision and the superior court should have determined the timing of services related to the claims and Sunflower's willingness to cooperate were mitigating circumstances. On cross-appeal, AHCCCS argues the Director's Decision was correct and that, contrary to the superior court's conclusions, AHCCCS properly considered Sunflower's financial condition and found Sunflower's failure to provide information was an aggravating factor. The court addresses each argument in turn.

### A. Mitigating Circumstances.

¶14 When determining the amount of a penalty and assessment, AHCCCS must consider mitigating circumstances including, as relevant here: (1) whether "[a]ll the dates of service occurred within six months or less;" (2) "[t]he degree of culpability of a person who presents or causes to present a claim;" and (3) "[t]he financial condition of a person who presents or causes to present a claim." Ariz. Admin. Code (A.A.C.) R9-22-1104(1)(b), (2), (3). Sunflower bears the burden "of producing and proving by a preponderance of the evidence any circumstance that would justify reducing the amount of the penalty, assessment, or penalty and assessment," that is, any mitigating circumstance. A.A.C. R9-22-1111.

¶15 Sunflower argues the services related to the claims at issue took place within a six-month period and that the Director erred by not accounting for this mitigating circumstance. Yet Sunflower acknowledges that, for at least one claim at issue, the service took place outside that timeframe. AHCCCS regulations explicitly state the occurrence of all dates of service "within six months or less" is a mitigating circumstance, while the occurrence of all dates of service in a period greater than six months is an aggravating factor. A.A.C. R9-22-1104(1)(b), -1105(1)(d). Sunflower has not shown how the Director's strict adherence to this regulatory time-period delineation when evaluating the mitigating and aggravating circumstances was arbitrary, capricious, or an abuse of discretion.

**¶16** Sunflower also argues the Director should have found Sunflower's "degree of culpability" was a mitigating circumstance weighing against the imposition of the CMP. As applicable here,

> The degree of culpability of a person who presents or causes to present a claim is a mitigating circumstance if:
>
> a. Each service is the result of an unintentional and unrecognized error in the process that the person followed in presenting or in causing to present the service,
>
> b. Corrective steps were taken promptly by the person after the error was discovered, *and*
>
> c. The person had a fraud and abuse control plan that was operating effectively at the time each claim was presented or caused to be presented.

A.A.C. R9-22-1104(2) (emphasis added). Because the requirements are conjunctive, the absence of any of these three required showings means the mitigating circumstance does not apply.

**¶17** Sunflower argues "[t]he degree of culpability should have been considered a mitigating circumstance because the trip sheets that were submitted by Sunflower that had only the date changed [were] the result of an unintentional and unrecognized error in Sunflower's billing process." Yet the Director's Decision notes, and the record supports, Dempsey's testimony that multiple trip sheets "appeared to be the same and the only difference was the date of service and the member name. . . . [I]t appeared that several of the trip sheets submitted to AHCCCS were altered." The Director's Decision also notes that "[a]lthough transportation services were not personally provided by Sunflower, all of the trip sheets submitted to AHCCCS in support of its claims bore Sunflower's name," rather than the name of Sunflower's subcontractors. The record supports the conclusion that these actions were not merely "errors in [Sunflower's] process," but instead were deliberate acts committed by individuals working on behalf of Sunflower. Because Sunflower has not shown it fulfilled the first requirement to demonstrate its lack of culpability, Sunflower has not shown

the Director's Decision rejecting Sunflower's "degree of culpability" to be a mitigating circumstance was arbitrary, capricious, or an abuse of discretion.

**¶18**   The superior court found the Director's Decision failed to address Sunflower's financial condition when considering mitigating circumstances. As applicable here,

> [t]he financial condition of a person who presents or causes to present a claim is a mitigating circumstance if the imposition of a penalty, assessment, or penalty and assessment without reduction will render the provider incapable to continue providing services. AHCCCS shall consider the resources available to the person when determining the amount of the penalty, assessment, or penalty and assessment.

A.A.C. R9-22-1104(3).

**¶19**   Sunflower bore the "burden of producing and proving by a preponderance of the evidence any circumstance that would justify reducing the amount of the penalty, assessment, or penalty and assessment," including its financial condition. A.A.C. R9-22-1111(A). Yet Sunflower did not provide documentation or other evidence to the OIG in support of a "reduction or modification of the [CMP]," despite being informed in the Notice of Intent of its opportunity to do so. Had it done so, AHCCCS would have been obligated to review the documentation and adjust its computation of the CMP accordingly. Instead, the only evidence Sunflower produced on the point was Yushuvayev's testimony at the hearing that, if AHCCCS were to impose the penalty against Sunflower, he would "have to close the doors." The Director's Decision properly could conclude that this brief, self-serving testimony, unsupported by other record evidence, did not suffice to meet Sunflower's burden of proving that its financial condition should have been considered a mitigator justifying a reduction of the penalty and assessment. *See id.*

**¶20**   Apart from Sunflower's failure to meet this burden of proof, Dempsey testified at the hearing that she had taken Sunflower's financial condition into account when determining the CMP and that there was not "anything about the financial condition of Sunflower, that [she was] aware of, that [she] believe[d] to be a mitigating factor." The Director's Decision acknowledged Dempsey's testimony about mitigating circumstances and

determined the CMP was appropriate. Sunflower has not shown, in concluding that Sunflower's financial condition was not a mitigating circumstance, that the Director's Decision was arbitrary, capricious, or an abuse of discretion. Accordingly, the superior court's ruling to the contrary is vacated, and the Director's Decision is affirmed as to this mitigating factor.

### B. Aggravating Circumstances.

**¶21** The Director is directed to consider aggravating circumstances when determining the penalty and assessment amount, including, as relevant here, the "[n]ature and circumstances of each claim." A.A.C. R9-22-1105(1).

> The nature and circumstances of each claim and the circumstances under which the claim is presented or caused to be presented are aggravating circumstances if:
>
>> . . .
>>
>> The person refuses to provide pertinent documentation to AHCCCS for a claim *or* refuses to cooperate with investigators . . . .

*Id.* at -1105(1)(b) (emphasis added). AHCCCS bears the burden of proving any aggravating circumstance. *Id.* at -1111(A).

**¶22** Dempsey testified that Sunflower did not produce all documents requested, despite Dempsey making "a few attempts" to get Yushuvayev and Davidova to do so. The superior court, however, concluded the Director's Decision could not correctly find Sunflower's failure to produce documents was an aggravating factor because Scott Weinberg testified "that Sunflower worked with AHCCCS to provide records on request." That testimony contradicts the finding that Sunflower refused to cooperate, and thus, there is not substantial evidence to support that aggravating factor.

**¶23** AHCCCS properly may find an aggravating circumstance when *either* "[t]he person refuses to provide pertinent documentation . . . *or* refuses to cooperate with investigators . . . ." *Id.* at -1105(1)(b). Weinberg's testimony that Sunflower generally "worked with AHCCCS to provide records" does not preclude a finding that Sunflower ultimately did not provide such documentation, or otherwise "refused to provide pertinent

documentation to AHCCCS," as testified to by Dempsey. *See id.* "If an agency's decision is supported by the record, substantial evidence exists to support the decision even if the record also supports a different conclusion." *Gaveck*, 222 Ariz. at 436 ¶ 11. Dempsey's testimony supported a conclusion that Sunflower "refused to provide pertinent documentation," meaning the Director's Decision applying the aggravating circumstance was not arbitrary, capricious, or an abuse of discretion. *See* A.A.C. R9-22-1105(1)(b). Accordingly, the superior court's ruling to the contrary is vacated and the Director's Decision as to this aggravating circumstance is affirmed.

### III. Sunflower Has Not Shown The Director's Decision Improperly Found AHCCCS' Extrapolation Was Valid.

**¶24** The Director may impose on any provider violating Section 36-2918(A) "a civil penalty of not to exceed two thousand dollars for each item or service claimed" and "an assessment of not to exceed twice the amount claimed for each item or service." A.R.S. § 36-2918(B). To prove the "number and amount of claims" upon which a civil penalty may be based, AHCCCS "may introduce the results of a statistical sampling study as evidence of the number and amount of claims that were presented or caused to be presented by the person." A.A.C. R9-22-1111(B)(1). "A statistical sampling study constitutes prima facie evidence of the number and amount of claims if computed by valid statistical methods." *Id.* Once AHCCCS has made this prima facie case, the burden shifts to the provider "to produce evidence reasonably calculated to rebut the findings of the statistical sampling." *Id.* at -1111(B)(2).

**¶25** Weinberg testified that the CMP Committee, after considering various information, made the decision regarding the CMP amount AHCCCS imposed. That group decided to impose a penalty of only $1,500 per claim line, despite its authority to impose up to $2,000 per claim line, "given the mitigating factors." Multiplied by the 110 claim lines determined to be erroneous, this yielded a penalty amount of $165,000. Sunflower argues for the first time in its reply brief on appeal that the $1,500 should have been calculated for each date of service, rather than for each claim line, a method that would have cut the penalty nearly in half. Because Sunflower raised this argument for the first time in its reply brief on appeal, it is waived. *In re Marriage of Pownall*, 197 Ariz. 577, 583 ¶ 25 n.5 (App. 2000).

**¶26** Weinberg also described the extrapolation process by which AHCCCS determined the assessment:

> So when there's an investigation, typically there's an ad hoc report that's run first, and then based upon that there's a random sample that gets generated. And so in this case there was a random sample of 287 claim lines that were reviewed. 110 of those were found to have some kind of error in them. . . . [S]o we look at the amount billed for those 110, and we divide that by the total amount billed for the whole sample, which is [the] 287. So . . . the 110 was [$]9,050.22, and we divide that by the total amount of the random sample, [$]16,812.03. And then from there we get an amount of 53.83 percent. And so that is our error rate. So we take that error rate and multiply that by the total amount billed from the ad hoc. And then from there we get an amount of [$]715,400.18.

Weinberg went on to explain that AHCCCS has authority to assess "up to two times" of the amount found to be improperly claimed. "However, in this case, again, considering all the aggravating and mitigating circumstances, the [CMP C]ommittee decided to only take 75 percent of" the $715,400.18. "So that's how [AHCCCS] arrived at the assessment of [$]536,550.14."

¶27　　　Sunflower argues it "demonstrated that AHCCCS' extrapolation should not be considered a statistically valid methodology of calculating the CMP assessment because the 110 claims at issue were only one type of claim (fee for service versus managed care) over a six-month timeframe (versus a three year period)." During the hearing, however, Sunflower did not present evidence or otherwise establish through cross-examination that AHCCCS' methodology -- or the application of that methodology -- was flawed. Instead, Sunflower asked Weinberg how AHCCCS could have gotten a "random sample" made up entirely of "fee-for-service claims."

¶28　　　Similarly, during closing arguments, Sunflower stated that "[t]o have a random sample of 110 claim lines, when they're all Navajo area claim lines does not seem as if that's going to be a random sample. . . . It's not a random sample." But AHCCCS' random sample did not contain only fee-for-service claims. Instead, it was made up of 287 claims, both managed care and fee-for-service, over three years. Of that 287-claim-line sample, 149 claim lines originally were found to contain error, including some managed

care and some fee-for-service. It was only after the CMP Committee agreed not to impose a penalty or assessment for the managed care claims found to be erroneous that they removed those claim lines from the Notice, leaving a total of 110 erroneous, fee-for-service claim lines at issue. That these remaining 110 claims occurred only over seven months does not itself establish that AHCCCS' methodology was invalid.

**¶29**    In sum, Sunflower has not produced evidence to show or made arguments identifying how AHCCCS' method was invalid, or how it preserved any argument supported by the record that the method was invalid. Therefore, Sunflower has failed to show the Director's Decision affirming the CMP was arbitrary, capricious, or an abuse of discretion.

## IV.    Attorneys' Fees And Costs On Appeal.

**¶30**    In its opening brief, Sunflower requested attorneys' fees pursuant to A.R.S. § 12-341.01. Sunflower, however, is not a successful party on appeal, a prerequisite to a fee award under A.R.S. § 12-341.01. In addition, AHCCCS notes in its answering brief that, in the PPA, Sunflower agreed "to waive attorneys' fees in any dispute concerning this Agreement," and Sunflower did not dispute that agreement in its reply brief. For these reasons, Sunflower's request for an award of attorneys' fees on appeal is denied. AHCCCS has not requested fees on appeal but is awarded its taxable costs incurred on appeal contingent upon compliance with Arizona Rules of Civil Appellate Procedure 21.

## CONCLUSION

**¶31**    Because Sunflower has shown no error, the Director's Decision is affirmed. To the extent the superior court found the Director's Decision failed to consider Sunflower's financial condition and improperly considered Sunflower's failure to cooperate or provide required documentation, its ruling is vacated. The remainder of the court's ruling affirming the Director's Decision is affirmed.

