NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARICOPA COUNTY SHERIFF'S OFFICE, *Plaintiff/Appellant*,

*v.*

MARICOPA COUNTY LAW ENFORCEMENT OFFICERS MERIT
SYSTEM COMMISSION, et al., *Defendants/Appellees*.

No. 1 CA-CV 17-0681
FILED 12-6-2018

Appeal from the Superior Court in Maricopa County
No. LC2016-000012-001
The Honorable Patricia Ann Starr, Judge

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Christine B. Stutz
*Counsel for Plaintiff/Appellant*

Napier, Coury & Baillie, P.C., Phoenix
By Michael Napier, Kathryn R. E. Baillie
*Counsel for Defendant/Appellee Wade Voeltz*

Pierce Coleman PLLC, Scottsdale
By Justin S. Pierce
*Counsel for Defendant/Appellee Maricopa County Law Enforcement Officers
Merit System Commission*

---

**MEMORANDUM DECISION**

---

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Paul J. McMurdie joined.

---

**W I N T H R O P**, Judge:

¶1        Following an investigation initiated in 2014, the Maricopa County Sheriff's Office ("MCSO") dismissed Deputy Wade Voeltz from his employment.  Voeltz appealed the dismissal to the Maricopa County Law Enforcement Officers Merit System Commission ("the Commission"), which concluded that MCSO did not make a good faith effort to complete its investigation within 120 business days as then-required by statute.  *See* former Ariz. Rev. Stat. ("A.R.S.") § 38-1105(B).[1]  The Commission sustained

---

[1]        The legislature substantially revised Title 38 effective January 1, 2015, *see* 2014 Ariz. Sess. Laws, ch. 240, §§ 1-17 (2nd Reg. Sess.), but the revisions were not made retroactive, and during the administrative hearing process, MCSO and Voeltz stipulated that the previous version of Title 38 — that in effect in 2014, when MCSO began investigating Voeltz — would govern.  Throughout this decision, references to the applicable statutes are to the version in effect before 2015.  The pre-2015 version of § 38-1105(B) set forth a time limitation on disciplinary action against a law enforcement officer, providing in relevant part:

> *[A]n employer shall make a good faith effort to complete any investigation of employee misconduct within one hundred twenty business days after the employer receives notice of the allegation by a person authorized by the employer to initiate an investigation of the misconduct.*  The investigation is considered complete on the date the employee is served with the notice of discipline or the notice of findings.  If the employer exceeds the one hundred twenty business day limit, the employer will provide the employee with a written explanation containing the reasons the investigation continued beyond one hundred twenty business days.  On an appeal of discipline by the employee, a hearing officer, administrative law judge or appeals board may dismiss the discipline if it is determined

Voeltz' appeal and dismissed the discipline against him, and MCSO appealed to the superior court. The superior court affirmed the Commission's decision, and MCSO appealed to this court. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**     In late July 2014, personnel of MCSO's Criminal Employment Unit ("CEU") were tasked with conducting a complete audit and organization of past and present CEU reports that resulted in an arrest, with the completed product to be used in a series of civil lawsuits. During the audit, investigators discovered that items including photographs were missing from a case file involving the search of a Pei Wei restaurant.

**¶3**     On July 28, 2014, MCSO's Deputy Chief of Investigations, Edward Lopez, instructed MCSO Sergeant Dmitrius Whelan to contact Voeltz, who had served as a detective in the CEU from 2009 to 2012, had been the Pei Wei case agent from 2010 to 2012, and signed out the original file from the Property and Evidence Department in early 2012. On July 30, 2014, Whelan questioned Voeltz, who told Whelan that he had returned the original file to the Pei Wei corporate office in Scottsdale but did not recall returning any photographs. Voeltz further stated he had "returned lots of files" and "[v]irtually every time I was a case agent for a case, I returned the original files to the business owners at some point" after the case closed.

**¶4**     Whelan briefed Lopez, who directed Whelan to contact Vanessa Losicco, MCSO's general counsel. On Friday, August 1, Losicco instructed Whelan to "pull an IA investigation" number and formally document his investigation. On August 4, Whelan obtained I/A #14-0443.

**¶5**     On August 12, Whelan served Voeltz with a notice of investigation (re. I/A #14-0443) as defined in Sheriff's Office Policy ("Policy") GH-2, Internal Investigations, stemming from an alleged violation of Policy GJ-4, Evidence Control. That same day, Whelan reviewed a list of historic CEU cases, finding only six cases on which Voeltz had been the case agent, then pulled the property logs for those cases, and concluded, "A review of the property logs show[s] that Deputy Voeltz[']

---

that the employer did not make a good faith effort to complete the investigation within one hundred twenty business days.

(Emphasis added.)

removal of CEU[-]related evidence after disposition of the case is not common practice for him. To date, the evidence reference DR 10-121386 [the Pei Wei case] are the only items which Deputy Voeltz has removed from MCSO property and evidence."[2]

**¶6** Whelan interviewed Voeltz on August 27, giving Voeltz a *Garrity* warning[3] and allowing an employee-observer to be present. At the end of the interview, Voeltz asked Whelan, "And what's your timeframe? And I know you have so many days to get things completed. Where are you at in that process?" Whelan replied, "I wanna say 120. . . . And, uh, I think we started beginning of August. . . . August 4th or August 8th, somewhere around there. So, uh, but it shouldn't take . . . four months."

**¶7** Sometime in October 2014, Whelan completed his portion of the investigation relating to I/A #14-0443.[4] Relying in part on his August 12 investigation and his previous interviews of Voeltz, Whelan indicated a concern with truthfulness issues, noting in part and concluding as follows:

> Voeltz made statements [on August 27] that he could specifically remember 2-3 cases in which he had dropped the original employee files off to the business after the case was closed. This was shown not to be true.
>
> . . . .
>
> There is evidence to support the allegation that Deputy Wade Voeltz did not properly document the return of evidence to Pei Wei. There is also cause to believe that the evidence was never returned by Voeltz to Pei Wei. This investigation is

---

[2] Voeltz testified he had actually been the case agent on at least twenty CEU investigations from 2009 to 2012. In several instances, a record in the property logs related to those cases was marked "RTO," meaning some item(s) of evidence had been "returned to owner."

[3] *See Garrity v. New Jersey*, 385 U.S. 493, 499-500 (1967) (holding that if a state requires a police officer to answer questions as a condition of keeping his job, the officer's compelled statements cannot be used in subsequent criminal proceedings).

[4] Whelan's investigation report is not dated and does not otherwise indicate exactly when he completed his portion of the investigation.

being forwarded to the Professional Standards Bureau [("PSB") (formerly Internal Affairs)] for *further* investigation.

(Emphasis added.)

¶8 On October 24, the division commander, Captain Freddie Aldorasi, signed off on Whelan's report, while noting "[o]nly Chief Deputy [Jerry] Sheridan can sustain on truthfulness violations." As Aldorasi summarized:

> 147 Items of evidence related to [the Pei Wei case] w[ere] checked out from evidence by W. Voeltz #1658 noted to be returned to Owner. Some of the items noted to be returned should not have been returned and are property of MCSO. In attempts to locate the MCSO[-]owned items, it is alleged by Owner (Pei Wei) that W. Voeltz did not return any items to them after removing the items from property and evidence.

¶9 The investigation continued up the chain of command to Lopez, who agreed with the concern expressed by Whelan and noted by Aldorasi of an existing issue regarding Voeltz' truthfulness. Lopez testified:

> [I]n Sergeant Whelan's report, the original seems that Deputy Voeltz had personally returned the items to, [] Pei Wei, and after investigating further with [] Pei Wei, he could not confirm that that ever occurred.
>
> There are also statements that receipts were generated upon the return of that, and then brought back to the office, and gone through the regular protocols to enter them in. Sergeant Whelan could not confirm that either.
>
> There w[ere] also statements made, I believe, that when cases were closed, it was standard practice for Deputy Voeltz to go ahead and return the property to the original owners of those companies, and in Sergeant Whelan's investigation, no other property was ever checked out of the cases from CEU and returned back to those property owners, and those statements were all in conflict with each other and it just gave the appearance of a truthfulness issue.

¶10 Lopez, in turn, forwarded the investigation to Sheridan because "he is the one who can rule on truthfulness issues." On November

25, Sheridan requested that Captain S.M. Bailey, Commander of the PSB, further investigate the possible truthfulness violation. As Lopez later testified:

> Q      And so at that point, there was going to be no action taken on the evidence control issue until the truthfulness can be resolved; is that accurate?
>
> A      Correct.
>
> Q      So after -- well, did you have a discussion with Chief Deputy Sheridan about this particular evidentiary investigation, the property investigation?
>
> A      No, I forwarded it to him and next I heard, it had been forwarded to PSB to conduct the next internal investigation regarding the truthfulness issue.

¶11      Rather than open or "pull" a new I/A number, however, MCSO continued to use the same I/A number, and Bailey assigned Sergeant Darriell Bone to review I/A #14-0443 and further investigate the truthfulness issue. Bone later testified as follows:

> When I received the case, essentially it was an investigation that was initiated by Sergeant Dmitrius Whelan. The allegation that I was investigati[ng] was for truthfulness. What I did was I took the case that was initiated by Sergeant Whelan and reviewed it to identify the issues of truthfulness that I would be addressing later on.

¶12      Upon review, Bone identified three issues involving apparent conflicting statements by Voeltz: (1) Voeltz' memory of taking out and returning personnel files to Pei Wei; (2) Voeltz' memory of receiving confirmation the case was closed; and (3) Voeltz' stated practice of returning original files to the appropriate business. On December 30, Bone issued Voeltz a second notice of investigation, which informed Voeltz "that an official Administrative Investigation has been initiated" based on the "[i]nconsistent and/or unsupported statements you made while being questioned during an Administrative Investigation (IA#14-0443)."[5] That

---

[5]      The term "notice of investigation" is not a statutorily defined term, and MCSO does not argue that this second notice of investigation triggered any new timeline. Moreover, the 120-business day time limit is triggered by notice to the *employer*, not the *employee*. *See* A.R.S. § 38-1105(B).

same day, Voeltz acknowledged receipt of the notice of investigation, and Bone interviewed him.

¶13 Concluding an allegation of untruthfulness could be sustained as to the third issue, Bone prepared a report and submitted it to the chain of command. Sheridan reviewed Bone's investigation and, on January 22, 2015, signed off on Bone's report.[6] On March 6, Sheridan sustained the following allegation:

> Deputy Voeltz made statements during an Administrative Investigation that lacked factual basis and gave inconsistent statements regarding his handling of Property and Evidence after his cases had been adjudicated.

¶14 On April 3, 2015, MCSO notified Voeltz of its intent to discipline him and that it was considering dismissing him from employment. On April 16, MCSO terminated Voeltz' employment "subsequent to Internal Investigation #14-0443" and premised on neglect of duty (Policy GJ-4, Evidence Control) and dishonesty (Policy CP-5, Truthfulness). The termination letter directed that "[e]ach violation constitutes separate and independent cause for dismissal."

¶15 Voeltz appealed to the Commission, where he filed a motion to dismiss the discipline (and requested reinstatement) based on MCSO's failure to make a good faith effort to complete its investigation within 120 business days. *See* A.R.S. § 38-1105(B). After briefing, a hearing officer denied the motion to dismiss, finding (1) there were two separate investigations: a missing-evidence investigation and an untruthfulness investigation, and (2) the untruthfulness investigation began on November 25, 2014 (when Sheridan referred the case to the PSB), and ended on April 3, 2015 (with the notice of intent to discipline)—*i.e.*, well within the statutory time limitation. Later, following a two-day evidentiary hearing, the hearing officer submitted to the Commission findings of fact, conclusions of law, and a recommendation that Voeltz' appeal be denied and his dismissal sustained.

---

[6] The document Sheridan signed indicates Bone had investigated an alleged policy violation of CP-5, Truthfulness. The document shows both a "Date of Incident" and a "Date Investigation Started" of July 30, 2014, and a "Date Completed" of January 6, 2015.

**¶16**        The Commission voted to reject the hearing officer's report and sustain Voeltz' appeal,[7] however, based on MCSO's failure to meet its burden to prove by a preponderance of the evidence that it met the statutory requirements of § 38-1105(B) by making a good faith effort to complete the investigation within 120 business days. According to the Commission, there was one official investigation that started per MCSO policy on July 30, 2014 (when Whelan questioned Voeltz) or August 1, 2014 (when Whelan was authorized to "pull" an I/A number), and ended on April 3, 2015 (with the notice of intent to discipline Voeltz).[8] Further, the Commission concluded, MCSO did not provide a good faith reason for exceeding the 120-business day requirement. Accordingly, the Commission exercised its discretion to reject the disciplinary action and sustain Voeltz' appeal.

**¶17**        MCSO appealed to the superior court. *See* A.R.S. § 12-904. Concluding the Commission's determination was not contrary to law, arbitrary and capricious, or an abuse of discretion, the superior court affirmed, explaining in part as follows:

> The Merit Commission's decision to dismiss the discipline against Voeltz has substantial support in the record. While the Sheriff's Office argues that it conducted two separate investigations, the record reflects that the Sheriff's Office instead conducted one investigation. After the Sheriff's Office began its investigation regarding the disposition of evidence, it uncovered allegations of untruthfulness, and expanded its investigation to include those allegations. The record does not support the Sheriff's Office['s] claim that it instead opened up a new and different investigation.
>
> The Merit Commission did exactly what A.R.S. § 38-1105(B) permitted it to do: dismiss the discipline after it determined that the Sheriff's Office did not make a good faith effort to complete its investigation within 120 days. Its exercise of its discretion under the statute was not contrary to

---

[7]        Under Rule 10.16 of the Maricopa County Employee Merit System Rules, the Commission "may adopt the hearing officer's report in its entirety, or modify it, or may itself decide the case upon the record, with or without taking additional evidence."

[8]        From August 1, 2014, to April 3, 2015, equals 167 business days.

law, arbitrary or capricious, or an abuse of the discretion afforded to the Merit Commission under the law.

**¶18** MCSO timely appealed to this court. We have jurisdiction pursuant to A.R.S. § 12-913. *See Svendsen v. Ariz. Dep't of Transp.*, 234 Ariz. 528, 533, ¶ 13 (App. 2014) (construing § 12-913 as allowing an appeal to this court).

## ANALYSIS

**¶19** On appeal, we consider the same underlying issue reviewed by the superior court: whether the Commission's decision was contrary to law, arbitrary and capricious, or an abuse of discretion. *See* A.R.S. § 12-910(E); *Gaveck v. Ariz. State Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 436, ¶¶ 11-12 (App. 2009); *Shorey v. Ariz. Corp. Comm'n*, 238 Ariz. 253, 257, ¶ 11 (App. 2015) (citations omitted). We view the facts in the light most favorable to upholding the Commission's decision. *Shorey*, 238 Ariz. at 258, ¶ 14. We will not reweigh the evidence, *see Comm. for Justice & Fairness v. Ariz. Sec'y of State's Office*, 235 Ariz. 347, 351, ¶ 17 (App. 2014), and will affirm if the Commission's decision is supported by substantial evidence, *see DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 335-36 (App. 1984). "Substantial evidence is any relevant evidence from which a reasonable mind might draw a conclusion." *Mealey v. Arndt*, 206 Ariz. 218, 221, ¶ 12 (App. 2003) (internal quotations and citations omitted); *accord In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999). "Whether substantial evidence exists is a question of law for our independent determination." *Gaveck*, 222 Ariz. at 436, ¶ 12 (citations omitted). We give deference to the Commission's resolution of issues that draw on "the accumulated experience and expertise of its members," *Croft v. Ariz. State Bd. of Dental Exam'rs*, 157 Ariz. 203, 208 (App. 1988) (citation omitted), but we are not bound by the Commission's (or the superior court's) legal conclusions, including those involving statutory interpretation, *see JHass Grp. L.L.C. v. Ariz. Dep't of Fin. Insts.*, 238 Ariz. 377, 383, ¶ 20 (App. 2015); *Comm. for Justice & Fairness*, 235 Ariz. at 351, ¶ 17; *Gaveck*, 222 Ariz. at 436, ¶ 12.

I. *Did MCSO Complete the "Investigation" Within 120 Business Days?*

A. *Did the "Missing-Evidence Investigation" Trigger § 38-1105(B)?*

**¶20** MCSO initially argues the 120-business day limitation is triggered only by an investigation of employee misconduct the employer or officer reasonably believes could result in "disciplinary action" (*i.e.,*

dismissal, demotion, or suspension of more than eight hours). We agree with MCSO that the statutory language supports this initial argument. *See* A.R.S. §§ 38-1101(A), (P)(2), -1105(B).

¶21 Next, relying on its initial argument, MCSO argues a Policy GJ-4 violation could not result in disciplinary action; therefore, the missing-evidence allegation could not have triggered the time limitation. *See* A.R.S. §§ 38-1101(A), (P)(2), -1105(B). But MCSO offers no factual support for this argument beyond Lopez' testimony that "[a]ssuming no prior discipline," the failure to properly handle evidence "typically" results in a written reprimand. Indeed, as MCSO's April 3 letter warned, and April 16 termination letter directed, Voeltz *was* disciplined—with dismissal—for the Policy GJ-4 (Evidence Control) violation, separate and independent from his violation of Policy CP-5 (Truthfulness).

¶22 Finally, MCSO argues the missing-evidence investigation did not trigger the time limitation because neither Voeltz nor MCSO reasonably believed the misconduct could result in disciplinary action. However, the record supports an inference to the contrary. Voeltz asked Whelan about the "timeframe" when he was questioned on August 27, 2014, suggesting Voeltz believed he was facing disciplinary action. For its part, MCSO afforded Voeltz the procedural safeguards due him under Title 38, suggesting at least Whelan believed Voeltz was facing disciplinary action. Although MCSO contends the process was required by MCSO policy,[9] not due pursuant to statute, this explanation is belied by Whelan's response to Voeltz' "timeframe" question: "[W]e started beginning of August. . . . August 4th or August 8th, somewhere around there. So, uh, but it shouldn't take . . . four months." Accordingly, the missing-evidence investigation triggered the 120-business day limitation period of § 38-1105(B).

> B. Did MCSO Conduct a Separate "Untruthfulness Investigation"?

¶23 Contending there is "ample evidence" showing a separation of the missing-evidence and untruthfulness investigations, MCSO argues the Commission erred by subsuming the untruthfulness investigation into

---

[9] MCSO concedes it was conducting an "official investigation" as of August 4, 2014 (when Whelan obtained I/A #14-0443).

the missing-evidence investigation for purposes of § 38-1105(B).[10]  MCSO further argues that the purportedly separate untruthfulness investigation was not authorized until November 25, 2014, when Sheridan referred the matter to Bailey; accordingly, MCSO maintains that November 25, 2014, was the date that started the running of the 120-business day limitation period for the untruthfulness investigation.

**¶24**      In its order sustaining Voeltz' appeal, the Commission concluded, *inter alia*, that (1) MCSO's official documentation and policies supported the conclusion that only one internal affairs investigation, I/A #14-0443, occurred, (2) both alleged violations (Policy GJ-4, Evidence Control, and Policy CP-5, Untruthfulness) arose out of I/A #14-0443, (3) the employer had received notice of Voeltz' inconsistent statements no later than August 27, and knew by that date it had 120 business days to complete its investigation, and (4) MCSO "made no eff[or]t to keep the violations separate or clearly document on its official records that the cases were separate investigations with different start dates."

**¶25**      When the question is debatable and one in which we might have reached a different conclusion, we may not substitute our judgment for that of the Commission if it was persuaded by the probative force of the evidence before it.  *See Blake v. City of Phoenix*, 157 Ariz. 93, 96 (App. 1988). Accordingly, we generally defer to the Commission's resolution of an issue. *See Croft*, 157 Ariz. at 208.

**¶26**      In this case, substantial evidence supports the Commission's findings, and those findings support the Commission's conclusions.  Of particular relevance, we note that (1) two of the three statements at issue— that Voeltz returned files to Pei Wei after he confirmed the case was closed—related directly to the Pei Wei case, and the third—that he returned

---

[10]      MCSO also argues the Commission erroneously counted 120 business days from July 30, 2014 (when Whelan first questioned Voeltz), *see* A.R.S. § 38-1101(D)(2), or from August 1, 2014 (when Whelan was instructed to "pull" an I/A number after briefing Lopez and consulting Losicco).    Assuming without deciding the Commission erred, the investigation was completed well past 120 days from August 4 (when Whelan obtained I/A #14-0443), August 12 (when Whelan conducted his investigation regarding CEU cases in which Voeltz was the case agent and served Voeltz with notice of the missing-evidence investigation), or August 27 (when Whelan interviewed Voeltz a second time after concluding that Voeltz' July 30 statements were not wholly supported by Whelan's investigation).

original files as a matter of practice—related indirectly to that case; and (2) the same investigation number was used as a basis to support both causes for dismissal. As Bone confirmed, "What I did was I took the case that was initiated by Sergeant Whelan and reviewed it to identify the issues of truthfulness that I would be addressing later on." Viewing the facts in the light most favorable to upholding the Commission's decision, *see Shorey*, 238 Ariz. at 258, ¶ 14, a reasonable person could conclude that MCSO began investigating an allegation of untruthfulness on or about July 30, 2014 (and no later than August 27, 2014), and thereafter an untruthfulness investigation was "furthered" up the chain of command. *See Pouser*, 193 Ariz. at 579, ¶ 13 ("Substantial evidence is evidence which would permit a reasonable person to reach the trial court's result." (citation omitted)). Moreover, to the extent there is ambiguity as to when the truthfulness portion of the investigation began, the burden lies with MCSO, rather than Voeltz, to demonstrate MCSO began a new investigation rather than continuing the old investigation. *See* A.R.S. § 38-1101(J) ("The burden of proof in an appeal of a disciplinary action by a law enforcement officer or probation officer shall be on the employer."). And although MCSO argues the Commission "improperly conflated two separate investigations," we agree with the Commission that, on this record, MCSO made little or no effort to delineate between the violations or clearly document on its official records that the cases were separate investigations with different start dates.

**¶27**        MCSO focuses on Sheridan's November 25, 2014 request that Bailey further investigate the untruthfulness allegation as the operative date beginning the 120-business day deadline, but its reliance on that date is not supported by the policies it cites or the record. Granted, pursuant to MCSO policy, only the Chief Deputy "may make a finding" of untruthfulness and a "sustained" violation of Policy CP-5 "shall result in termination of employment."[11] MCSO Policy CP-5, § 1(F). Specifically, though, Policy CP-5, § 1(E) provides:

> *All allegations of untruthfulness shall be documented in a*
> *memorandum and forwarded immediately through the chain of*

---

[11]        Lopez testified that, under MCSO's zero tolerance policy and practice, a truthfulness violation always results in a termination of employment. Nonetheless, on cross-examination, Lopez acknowledged he was aware of at least one previous instance in which an MCSO trainee/employee had been determined to have been untruthful, but still retained his position with MCSO.

*command to the Chief Deputy.* Only the Chief Deputy, or his designee, may make a finding on a truthfulness allegation.

(Emphasis added.) Thus, Policy CP-5 does not support the inference MCSO advances—*i.e.,* that only the Chief Deputy can authorize the *initiation* of an untruthfulness investigation. *See* A.R.S. § 38-1105(B). "Truth" is defined as "[a]ccuracy in the recounting of events; conformity with actuality; factuality." Black's Law Dictionary (10th ed. 2014). MCSO offers no persuasive explanation, nor can we discern one, how untruthfulness could be ascertained—much less alleged and documented—before an investigation into the accuracy, actuality, or factuality of the underlying statements.

> II. *Did MCSO Make a Good Faith Effort to Complete Its Investigation Within 120 Business Days?*

**¶28** According to MCSO, the Commission erred by concluding MCSO did not provide a good faith reason for exceeding the 120-business day requirement. MCSO, however, bore the burden to demonstrate its "good faith effort" before the Commission. *See* A.R.S. § 38-1101(J); *cf. McCloud v. State*, 217 Ariz. 82, 85, 87, ¶¶ 8, 11 (App. 2007) (recognizing that a limitation period is customarily subject to equitable tolling, but the party opposing dismissal based on the limitation period bears the burden of demonstrating entitlement to equitable tolling). Even assuming MCSO properly preserved the issue of good faith, we cannot say the Commission erred in concluding that MCSO failed to meet its burden to show it made a good faith effort to complete the investigation of Voeltz' misconduct within 120 business days after MCSO received notice of the allegation. MCSO provided no real "good faith" explanation or cogent argument to the Commission in support of its position that it exercised good faith in exceeding the statutory period. Further, MCSO does not argue, and the record does not support the conclusion, that MCSO ever provided Voeltz with a written explanation containing the reasons the investigation continued beyond 120 business days, *see* A.R.S. § 38-1105(B), or that any of the statutory exceptions to the necessary good faith effort apply here, *see* A.R.S. § 38-1105(B)(1)-(5).

**CONCLUSION**

**¶29** MCSO has not demonstrated that the Commission's decision was contrary to law, arbitrary and capricious, or an abuse of discretion, and substantial evidence exists to support the Commission's decision. Accordingly, we affirm the superior court's judgment affirming the

Commission's orders sustaining Voeltz' appeal and dismissing the discipline against him.[12] We award taxable costs to Voeltz upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[12]     Although Voeltz' discipline is dismissed, "[t]he allegation regarding any act, omission or other misconduct may be sustained, and [Voeltz'] record will reflect that the allegation was sustained but no discipline was administered due to the finding of the . . . [Commission] that [MCSO] did not make a good faith effort to complete the investigation in one hundred twenty business days."  A.R.S. § 38-1105(B).  Nevertheless, we understand MCSO's concern with Voeltz' apparent untruthfulness.  Upon proper request, prosecutors must disclose to criminal defendants the names of police officers accused of professional misconduct; the list of such officers is called a "Brady List."  *See generally Brady v. Maryland*, 373 U.S. 83, 87-88 (1963).