NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

JESSE JAMES JOHNSON, *Plaintiff/Appellant,*

*v.*

ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 18-0612
FILED 7-11-2019

Appeal from the Superior Court in Yavapai County
No.  P1300CV201600849
The Honorable Don C. Stevens II, Judge *Pro Tempore*

### VACATED AND REMANDED

### COUNSEL

Jesse James Johnson, Prescott Valley
*Plaintiff/Appellant*

Johnston Law Offices, PLC, Phoenix
By Logan T. Johnston
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Chief Judge Peter B. Swann and Judge Samuel A. Thumma joined.

---

**M c M U R D I E**, Judge:

¶1 Jesse James Johnson appeals the superior court's order affirming the Arizona Health Care Cost Containment System's ("AHCCCS") denial of long-term-care benefits. For the following reasons, we vacate the agency's denial and remand for further review of Johnson's request for benefits.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Johnson, a 39-year-old male, has suffered from medical and behavioral problems for much of his life. When Johnson was approximately 16 years old, he began experiencing several behavioral changes, including social withdrawal, memory loss, confusion, depression, and disorganized thinking. Johnson was potentially exposed to mold and possibly suffered a psychotic break around that time. At age 20, Johnson underwent a neuropsychological evaluation with Dr. James Youngjohn. Johnson's full-scale IQ was measured at 59, and the neuropsychologist stated that "Mr. Johnson's performances across the [given] battery of neuropsychological tests were generally severely to profoundly impaired." Dr. Youngjohn opined Johnson most likely suffered from schizophrenia, but that "[a]nother possibility would be some form of neurologic disease."

¶3 Two years later, psychologist Dr. Robert Crago evaluated Johnson and noted he "present[ed] with a significant and disabling symptom pattern" and that his reported symptoms included "difficulties with calculations, ability to express oneself in words, concentration and memory difficulties, difficulties with written or oral instructions, poor judgment, and difficulty with integrating new information." Dr. Crago opined that Johnson's history suggested a mixed etiology, including possible schizophrenia and possible toxic mold exposure. Over the next several years, numerous doctors examined Johnson and reported diagnoses of schizophrenia, neurocognitive disorder, or both.

**¶4** At the time he sought eligibility for long-term-care benefits, Johnson continued to experience similar disabling symptoms that impacted his ability to function independently. In March 2016, psychologist Dr. Karen Sullivan examined Johnson and diagnosed him with neurocognitive disorder due to multiple etiologies and with schizoaffective versus schizophrenic disorder. Dr. Sullivan reported: "it does appear that Mr. Johnson is unable to take care of his daily and essential activities without the help of family and that he will need ongoing support and care." Similarly, one year earlier, psychologist Dr. Raymond Lemberg reported Johnson's daily activities were "very limited" and that he "needs a great deal of help managing activities of daily living." Dr. Lemberg diagnosed Johnson with: (1) mild neurocognitive disorder, with behavioral disturbance, due to traumatic brain injury; (2) mild neurocognitive disorder, due to another medical condition, i.e., mold exposure; and (3) schizoaffective disorder, by history.

**¶5** Johnson applied for long-term-care benefits through AHCCCS, which conducted a preadmission screening ("PAS") assessment for the elderly and physically disabled in March 2016. *See* Ariz. Admin. Code ("A.A.C.") R9-28-303(A)(1). Johnson received a PAS score of 35, which is below the threshold score for eligibility for long-term-care benefits for the elderly and physically disabled. *See* A.A.C. R9-28-304(B)(3). AHCCCS then referred Johnson's file to Dr. Allison Perrin for physician review, who declined to find Johnson eligible for long-term-care benefits.

**¶6** After reviewing Johnson's PAS assessment and available medical records, Dr. Perrin noted that Johnson needs assistance with bathing, dressing, grooming, and eating, and "has resistive and disruptive behaviors (refuses medications, showers, hygiene, and putting on clean clothes; uses abuse language; calls his mother repeatedly)." She concluded, however, that "Johnson's cognitive and functional impairments can all be explained by his psychiatric illness" and "[b]ecause he does not have a medical diagnosis that puts him at risk of immediate institutionalization in a nursing facility, he is ineligible for the [long-term-care] program [for the elderly and physically disabled] at this time." AHCCCS then issued a notice of denial in May 2016.

**¶7** Johnson requested a hearing to review the denial of eligibility. A prehearing discussion was held, and Johnson's attorney argued that the PAS assessment Johnson was given did not appropriately evaluate his cognitive abilities, explaining: "[Johnson's] cognitive dysfunctions are so profound that they are affecting everything he does throughout the day."

¶8          A second physician's review was then conducted by Dr. Janine Roumain one day before the scheduled hearing. Dr. Roumain also concluded that Johnson was not at immediate risk of institutionalization in a nursing facility and that he was ineligible for long-term-care benefits through the elderly and physically disabled program. She concluded his "primary debility is his long-standing serious mental illness. He may also have some unspecified mild cognitive disorder. But his [resistiveness] to some [activities of daily living], his psychosis, and adverse behaviors are better explained by behavioral-health-associated cognitive difficulties." She did note, however, that Johnson "cannot live independently [and] requires supervision that may include personal care assist and supervision with medications."

¶9          After a two-day hearing, an Administrative Law Judge ("ALJ") recommended Johnson's appeal from the denial of eligibility for long-term-care benefits be denied. The ALJ detailed the results of Johnson's PAS assessment, the physicians' reviews, and the testimony offered, including from Johnson's mother. Johnson's mother "disputed the diagnosis of schizophrenia and argued that [Johnson] suffers from a major neurocognitive disorder." Johnson's mother also argued Johnson should have received a higher PAS score. The ALJ concluded that even if Johnson's score was increased, he failed to offer sufficient evidence to establish that he required the level of care provided in a nursing facility. The director of AHCCCS then reviewed the ALJ's decision, found it was supported by substantial evidence, accepted it, and denied Johnson's appeal.

¶10          Johnson then appealed the director's decision to the superior court under Arizona Revised Statutes ("A.R.S.") section 12-905. The superior court stated it:

> [A]cknowledges the heroic efforts that have been made on behalf of Jesse Johnson to demonstrate that he met all necessary criteria [to] qualify for [long-term-care] services. However, this Court is not required or allowed to reverse the decision of the Administrative Law Judge simply because it might have reached a different decision based on the same evidence.

The court found substantial evidence supported the administrative decision and that it was not arbitrary, capricious, or an abuse of discretion, and affirmed the ALJ's decision upholding AHCCCS's denial of eligibility for long-term-care benefits. Johnson then timely appealed to this court, and we have jurisdiction under A.R.S. §§ 12-913 and -120.21(A)(1).

4

## DISCUSSION

**¶11**	When reviewing an administrative agency's decision, the superior court "examines whether the agency's action was arbitrary, capricious, or an abuse of discretion." *Gaveck v. Ariz. State Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 436, ¶ 11 (App. 2009); *see also* A.R.S. § 12-910(E). The court "must defer to the agency's factual findings and affirm them if supported by substantial evidence." *Gaveck*, 222 Ariz. at 436, ¶ 11. This court engages in the same process as the superior court when it reviews a ruling affirming an agency's decision. *Id.* at ¶ 12. "Whether substantial evidence exists is a question of law for our independent determination. . . . [and] [w]e are not bound by an agency's or the superior court's legal conclusions." *Id.* (citations omitted). We review questions of law, including the interpretation of statutes and regulations, *de novo. Pima County v. Pima County Law Enf't Merit Sys. Council*, 211 Ariz. 224, 227, ¶ 13 (2005).

**¶12**	Johnson raises several issues on appeal. Because it is dispositive, however, this decision focuses on the PAS assessment AHCCCS used to determine Johnson's eligibility for benefits.

**¶13**	"To be eligible for institutional services or home and community based services" under the long-term-care system, "a person shall have a nonpsychiatric medical condition *or have a developmental disability as defined in § 36-551* that, by itself or in combination with other medical conditions, necessitates the level of care that is provided in a nursing facility or intermediate care facility." A.R.S. § 36-2936(A) (emphasis added); A.R.S. § 36-2939(A)–(C) (describing the services available to members of the long-term-care system). AHCCCS conducts a PAS assessment to determine if an applicant is eligible for services. A.R.S. § 36-2933(B).[1] The PAS assessment "assesses the functional, medical, nursing, social and developmental needs of the applicant," A.R.S. § 36-2936(A), and is used by AHCCCS to determine whether an applicant is "at immediate risk of institutionalization," A.A.C. R9-29-303(A). After completing the PAS assessment, the assessor calculates a PAS score. That score is then compared to "an established threshold score," which is

---

[1]	An applicant must also meet certain residency and financial criteria to be eligible. A.R.S. §§ 36-2931(5), -2934; A.A.C. R9-28-302. Johnson's eligibility under both criterion is not in dispute in this appeal.

generally "the point at which an applicant or member is determined to be at immediate risk of institutionalization." A.A.C. R9-28-303(E).

¶14      The PAS assessment utilized by AHCCCS differs based on whether the applicant is elderly and physically disabled or whether he or she is developmentally disabled. A.A.C. R9-28-303(A)(1–5). In this case, AHCCCS evaluated Johnson using the PAS assessment for individuals who are elderly and physically disabled. However, Johnson argues AHCCCS erred because it should have administered the PAS assessment for individuals with a developmental disability.

¶15      Johnson asserts he has a cognitive disability and is developmentally disabled as defined by A.R.S. § 36-551(19). AHCCCS responded that the Department of Economic Security ("DES") had already determined Johnson did not have a developmental disability and denied his application for developmental disability services ("DDD services"). However, in a recently issued opinion, this court vacated DES's determination of ineligibility and held Johnson has a developmental disability and is eligible for DDD services. *See Johnson v. ADES*, 1 CA-UB 18-0105, 2019 WL 2950041 (Ariz. App. July 9, 2019) (*Johnson I*).

¶16      Given our decision in *Johnson I* that he has a developmental disability as defined by A.R.S. § 36-551(19), we vacate and remand for AHCCCS to evaluate Johnson using the PAS assessment for the developmentally disabled. Both the assessment for the elderly and physically disabled and the assessment for the developmentally disabled determine the individual's PAS score based on a functional score and a medical score. *See* A.A.C. R9-28-304(B), -305(C). But the functional and medical scores are assessed differently in the two assessments and consider different categories. *Compare* A.A.C. R9-28-304(C) (describing the scored categories for the PAS assessment for the elderly and physically disabled), *with* A.A.C. R9-28-305(D) (detailing the scored categories for the PAS assessment for the developmentally disabled). And the threshold score, indicating that the applicant is "at immediate risk of institutionalization," is different based on whether the applicant is developmentally disabled or elderly and physically disabled. For a developmentally disabled individual, the threshold score is 40. A.A.C. R9-28-305(C)(3)(b). For an elderly and physically disabled individual, it is 60. A.A.C. R9-28-304(B)(3)(b).

¶17      Johnson received a total score of 35 on the PAS assessment for the elderly and physically disabled. AHCCCS thus denied his request for long-term-care benefits because the "preadmission screening . . . process has determined [he] [did] not currently need" care equal to that provided

in a nursing facility or intermediate care facility. But because the PAS assessment is different for a developmentally disabled individual and an elderly and physically disabled individual, Johnson's total score could be different when properly treated as a developmentally disabled individual, and the outcome could be different. Accordingly, we hold AHCCCS must reassess Johnson's eligibility for long-term-care benefits using the PAS assessment for the developmentally disabled.

¶18　　　We recognize the physicians' reviews, the ALJ, and the director concluded that Johnson had not demonstrated he was at immediate risk for institutionalization. But each review was premised on the initial PAS assessment for the elderly and physically disabled. Drs. Perrin and Roumaine, and the ALJ stated that DES had determined Johnson was ineligible for DDD services. And the director's decision thoroughly detailed the PAS assessment for the elderly and physically disabled before concluding that the denial of his appeal was proper. Thus, given our conclusion that AHCCCS must reassess Johnson using the PAS assessment for the developmentally disabled, the physicians' findings cannot be a basis for upholding the agency's denial of benefits.[2]

## ATTORNEY'S FEES AND COSTS

¶19　　　Johnson requests his attorney's fees and costs. We decline to award him his attorney's and expert witness fees incurred in the administrative proceeding below under A.R.S. § 12-348. *See* A.R.S. § 12-348 (authorizing an award of attorney's and expert witness fees incurred on appeal and in an administrative hearing to a party who prevails on the merits in a proceeding reviewing a state agency decision). Because we are remanding for further administrative proceedings and do not resolve whether Johnson is entitled to long-term-care benefits, he has not prevailed on the merits. *See Columbia Parcar Corp. v. Ariz. Dep't of Transp.*, 193 Ariz. 181, 185, ¶ 20 (App. 1999) (the party did not "prevail on the merits" in action

---

[2]　　　We also note that because Johnson has been found eligible for the DDD services, DES must also conduct a PAS assessment and may refer Johnson to AHCCCS for an eligibility determination. *See* A.R.S. § 36-559(B) ("After [DES] conducts preadmission screening pursuant to § 36-2936 and determines that a person with a developmental disability may be potentially eligible for the Arizona long-term care system pursuant to chapter 29, article 2 of this title, the person shall be referred to [AHCCCS] for an eligibility determination pursuant to § 36-2933 . . . ." (footnote omitted)).

that was remanded for rehearing and was not entitled to attorney's fees under A.R.S. § 12-348(A)(2)); *State ex rel. Corbin v. Challenge, Inc.*, 151 Ariz. 20, 28 (App. 1986) (reversing superior court's grant of summary judgment, but declining to award attorney's fees under A.R.S. § 12-348(A)(2)'s prevailing party standard); *see also 4501 Northpoint LP v. Maricopa County*, 212 Ariz. 98, 102, ¶ 22 (2006) ("The *Columbia Parcar* and *Challenge, Inc.* opinions illustrate that fees should not be allowed under [A.R.S. § 12-348] based on an interim decision because either party could still ultimately prevail on the merits.").

**¶20**        Johnson is entitled to his costs on appeal. Under A.R.S. § 12-341, the "successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided by law." Unlike under A.R.S. § 12-348, the successful party under A.R.S. § 12-341 need not necessarily prevail "on the merits" to be awarded costs. *See Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 393–94 (1985) (interpreting A.R.S. § 12-341.01, which provides attorney's fees to the "successful party") ("We believe that under A.R.S. § 12–341.01 'successful party' on appeal is not limited to those who have a favorable final judgment at the conclusion of the appeal process. It may include those who achieve reversal of an unfavorable interim order if that order is central to the case and if the appeal process finally determines an issue of law sufficiently significant that the appeal may be considered as a separate unit."), *superseded by statute on other grounds as recognized by Chaboya v. Am. Nat'l Red Cross*, 72 F. Supp. 2d 1081, 1092 (D. Ariz. 1999); *Douglas v. Governing Bd. of Window Rock Consol. Sch. Dist. No. 8*, 206 Ariz. 344, 349, ¶ 19 (App. 2003) (although case was remanded for further proceedings, parties that secured reversal of dismissal by superior court were "the successful parties" under A.R.S. § 12-341 and entitled to costs on appeal); *see also Columbia Parcar*, 193 Ariz. at 184, ¶¶ 17–18 (citing *Wagenseller*, 147 Ariz. at 391–94) (noting the contrast between A.R.S. § 12-341.01's "successful party" language and A.R.S. § 12-348's requirement that a party "prevail[] by an adjudication on the merits" to be awarded fees). Because we are vacating and remanding for a redetermination of Johnson's eligibility for services, Johnson is the successful party, and he is entitled to costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶21** For the foregoing reasons, we vacate AHCCCS's decision denying Johnson's eligibility for long-term-care benefits and remand for proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:  AA