NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

LEIF FLORES, *Appellant,*

*v.*

LA PAZ COUNTY SHERIFF'S OFFICE LOCAL RETIREMENT BOARD,
*Appellee.*

No. 1 CA-CV 23-0653
FILED 05-28-2024

---

Appeal from the Superior Court in La Paz County
S1500CV202200104
The Honorable Randall H. Warner, Judge

**AFFIRMED**

---

COUNSEL

Smith & Green, Attorneys at Law, P.L.L.C., Phoenix
By James M. Green, Quacy L. Smith
*Co-Counsel for Appellant*

Vederman Law Office, PLLC, Lake Havasu City
By Samuel E. Vederman
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge Kent E. Cattani and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

**¶1** Leif Flores appeals from the superior court's judgment affirming the denial, by the La Paz County Sheriff's Office Local Retirement Board (the "Board"), of his application for accidental disability retirement benefits. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** Flores worked as a deputy sheriff for the La Paz County Sheriff's Office for 15 years and was, at all relevant times, a member of the Public Safety Personnel Retirement System ("PSPRS"). *See generally* A.R.S. §§ 38-841 to -863.02.

**¶3** Flores and his close friend and immediate supervisor, Sergeant Michael Rudd, swapped work assignments on October 11, 2021. While on duty that evening, Sergeant Rudd was struck by a car and killed. Although Flores was also on duty at the time, he was not present when the accident happened.

**¶4** After the accident, Flores found it difficult to return to work, struggling, among other things, with "anxiety," "sleep disturbance," and a "fear of dying on duty." Feeling "no motivation," he "often stayed in an isolated area attempting to avoid work." After taking "a few days off," he told his lieutenant that he "felt incapable" of performing his job duties "safely and effectively."

**¶5** Flores was placed on administrative leave. He began seeing a psychologist, Dr. Robbie Adler-Tapia, who determined that Flores suffered from "traumatic grief issues" and "on-going concerns for his future safety" and diagnosed him with post-traumatic stress disorder ("PTSD"). After several months of treatment, Flores and Dr. Adler-Tapia jointly concluded that Flores should apply for PSPRS retirement.

**¶6** In April 2022, Flores applied for accidental disability retirement and was referred for an independent medical examination

("IME"). *See* A.R.S. §§ 38-847(D)(9), -859(A)(2). Dr. Nathan Thompson conducted the IME. *See* A.R.S. § 38-859(B).

**¶7** After completing the IME, Dr. Thompson determined that Flores "experienced a significant change in his mental health and ability to work following the on-duty death of Sergeant Rudd." Dr. Thompson found that due to a variety of factors, including "his close relationship with Sergeant Rudd" and the fact that they had switched work assignments on the night of the fatal accident, Flores was suffering from "survivor's guilt," anxiety, depression, and PTSD. Dr. Thompson opined that "Flores is psychological[ly] unable to continue working as a deputy with La Paz County" and that his inability to continue working was "directly related to the on-duty death of Sergeant Rudd." Addressing the statutory requirements for accidental disability, *see* A.R.S. § 38-842(1), Dr. Thompson concluded that Flores's condition "totally" and "permanently" prevented him from performing "a reasonable range of duties within [his] job classification" and was the "result of an event incurred during the performance of [his] duty."

**¶8** At a meeting on August 8, 2022, the Board voted to approve Flores's application for one year, subject to an annual review. At a later meeting, however, the Board met in an executive session with its counsel to discuss Flores's application, after which it unanimously voted to deny the application.

**¶9** At Flores's request, the Board held a rehearing, after which it affirmed its denial of his application, finding that his condition did not meet the statutory definition of "accidental disability" because it was not a "total and permanent" disability "incurred during the employee's duties."

**¶10** Flores appealed the decision to the superior court. Upon review, the court affirmed, finding that "the evidence supports [the Board's] determination that [Flores's] condition was not incurred in the performance of [his] duty" as required by A.R.S. § 38-842(1). In so holding, the court determined that "[s]ubstantial evidence supports a finding that [Flores's] condition resulted from his colleague's death and not from his own work duties." Although Flores experienced "guilt" over "having switched shifts with Sergeant Rudd," the court noted, Flores "did not have to be working at the time Sergeant Rudd was killed to feel that kind of guilt." Accordingly, the requisite "causal connection between [Flores's] work duties and his condition is lacking."

¶11            Flores timely appealed the court's decision, and we have jurisdiction pursuant to A.R.S. §§ 12-2101(A)(1), 12-913,[1] and 38-847(J).

## DICUSSION

¶12            Flores challenges the superior court's decision affirming the Board's denial of his application for accidental disability benefits, asserting that their decisions were contrary to "the expert medical opinions" and therefore "arbitrary and capricious."

¶13            When reviewing the decision of an administrative board, the superior court will affirm the decision unless it is "contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12-910(F). The superior court reviews questions of law *de novo*, *Batty v. Ariz. Med. Bd.*, 253 Ariz. 151, 154, ¶ 11 (App. 2022), but will defer to the board's factual findings if they are supported by substantial evidence, *Gaveck v. Ariz. State Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 436, ¶ 11 (App. 2009).

¶14            This Court "engage[s] in the same process as the superior court when we review its ruling affirming an administrative decision." *Batty*, 253 Ariz. at 154, ¶ 11 (citation omitted). We review questions of law *de novo*, *id.*, and "independently examine[] the record to determine whether the evidence supports the judgment," *Defs. of Wildlife v. Ariz. Navigable Stream Adjudication Comm'n*, 254 Ariz. 547, 565-66, ¶ 75 (App. 2023) (citation omitted). We view the evidence in the light most favorable to upholding the administrative decision and will affirm if any reasonable interpretation of the record supports it. *Id.* at 566, ¶ 75.

¶15            Under the PSPRS, "[a] member is eligible for an accidental disability pension if the member's employment is terminated by reason of accidental disability." A.R.S. § 38-844(B). "Accidental disability" is defined as:

> a physical or mental condition that the [Board] finds totally and permanently prevents an employee from performing a reasonable range of duties within the employee's job

---

[1] Section 12-913 allows a party to appeal to the "supreme court," which we have construed to allow an appeal to this Court, as this Court was created after the statute's enactment. *See Svendsen v. Ariz. Dep't of Transp.*, 234 Ariz. 528, 533, ¶ 13 (App. 2014).

classification and *that was incurred in the performance of the employee's duty*.

A.R.S. § 38-842(1) (emphasis added). A finding of an accidental disability must be based on medical evidence by a "designated physician or a physician working in a clinic that is appointed by the [Board]." A.R.S. § 38-859(A)(1)-(2), (B), (C).

**¶16**      Dr. Thompson determined that Flores's disability was the "result of an event incurred during the performance of [his] duty." Flores asserts that the Board and the superior court erred in rejecting this finding because, he contends, they "were legally bound to accept the professional medical opinion of the medical expert."

**¶17**      The parties do not dispute that Flores is permanently disabled, nor do they dispute that his disability resulted from the trauma he experienced as a result of Sergeant Rudd's death. The question here is whether that trauma was "incurred in the performance of" Flores's duties as a deputy sheriff within the meaning of A.R.S. § 38-842(1). Dr. Thompson's opinion that Flores's disability resulted from an event that occurred "during" the performance of his duty is insufficient to satisfy A.R.S. § 38-842(1). By its terms, the statute requires more than a temporal overlap between the disabling event and the employee's work hours. Instead, the term "incurred in the performance of [the officer's] duty" requires a showing of "a causal relationship between [the employee's] disability and his duties." *Wills v. Pima Cnty. Pub. Safety Pers. Ret. Bd.*, 154 Ariz. 435, 436 (App. 1987).

**¶18**      Flores argues that the requisite causal connection exists here because he "had swapped shifts with a colleague that was tragically killed in the line of duty" and was "on duty" when he learned of "the traumatic triggering event." He acknowledges that he did not witness the fatal collision but insists that he attempted to "respond[] to the scene of the deadly accident in his patrol vehicle" but was denied "access to the scene."

**¶19**      But the cause of Flores's disabling condition—*i.e.*, his grief, emotional distress, and guilt over Sergeant Rudd's death—did not result from Flores's performance *of his own duties*. As the superior court correctly observed, there is no indication that Flores's psychological disturbance was related to the fact that he was on duty rather than at home on October 11, 2021. We therefore agree with the superior court that the fact that Flores traded shifts with Sergeant Rudd and was on duty when he learned of his friend's tragic death does not establish that Flores's emotional condition

was incurred in the performance of his job duties. In the absence of a causal connection between Flores's performance of his duties and the disability he suffered as a result of Sergeant Rudd's death, the superior court properly affirmed the Board's denial of Flores's application for accidental disability retirement benefits.

**CONCLUSION**

**¶20**   Accordingly, we affirm the court's decision affirming the Board's denial of Flores's application for accidental disability retirement benefits.

**¶21**   Both parties request attorney fees and costs under A.R.S. § 12-348. Because Flores is not the prevailing party, we deny his request. The Board's request is barred by Subsection H of the statute, which provides that "[t]his section does not . . . [a]pply to an action arising from a proceeding before this state or a city, town or county . . . to determine the eligibility or entitlement of an individual to a monetary benefit or its equivalent." A.R.S. § 12-348(H)(1); *see also Cortaro Water Users' Ass'n v. Steiner*, 148 Ariz. 314, 319 (1986) (noting that "[a]n example" of a case in which A.R.S. § 12-348(H)(1)'s predecessor bars an award of fees is "where an applicant is seeking . . . a disability pension payment").

**¶22**   The Board also requests an award of "legal costs" under A.R.S. § 12-912. By its terms, A.R.S. § 12-912 applies only to costs incurred in preparing the administrative record for the superior court's review, and so does not authorize an award of costs here.

**¶23**   Finally, the Board requests an award of attorney fees and costs under A.R.S. § 12-341.01. In the exercise of our discretion, we decline to award attorney fees under A.R.S. § 12-341.01. As the prevailing party, the Board may recover costs on appeal under A.R.S. § 12-341 upon compliance with ARCAP 21.

